[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 401 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 402 
The question is whether, after the final submission of an arbitration, one of three arbitrators may by his resignation prevent the other two arbitrators from making a valid award under a submission providing for an award by a majority and for the filling of vacancies in case an arbitrator resigns. It is contended on one hand that, while the final award may unquestionably be made by a majority of the arbitrators, nevertheless in case of a vacancy by resignation before the final award is made, the agreement requires literally the choice of a substitute arbitrator before an award can be made; it is contended on the other hand that the arbitration proceedings proper, which require all the arbitrators to act, end when the case is finally submitted to the arbitrators for their decision and that the withdrawal of an arbitrator thereafter is of no more importance than the equivalent of a dissent.
The Legislature by the enactment of the Arbitration Law of 1920, and this court by upholding broadly the constitutionality of the statute (Matter of Berkovitz v. Arbib Houlberg,Inc., 230 N.Y. 261), have given a new importance to arbitration tribunals set up by the parties as a substitute for the courts in the settlement of controversies. To approach the consideration of the question we may, therefore, properly bear in mind the *Page 405 
development of the common law of arbitration through the statutes to its present stage.
But first, the practice of arbitrators of conducting themselves as champions of their nominators is to be condemned as contrary to the purpose of arbitrations and as calculated to bring the system of enforced arbitrations into disrepute. An arbitrator acts in a quasi-judicial capacity and should possess the judicial qualifications of fairness to both parties so that he may render a faithful, honest and disinterested opinion. He is not an advocate whose function is to convince the umpire or third arbitrator. He should keep his own counsel and not run to his nominator for advice when he sees that he may be in the minority. When once he enters into an arbitration he ceases to act as the agent of the party who appoints him. He must lay aside all bias and approach the case with a mind open to conviction and without regard to his previously formed opinions as to the merits of the party or the cause. He should sedulously refrain from any conduct which might justify even the inference that either party is the special recipient of his solicitude or favor. The oath of the arbitrators is the rule and guide of their conduct. Civil Practice Act, section 1452, prescribes the form of oath as follows: "Before hearing any testimony, arbitrators selected either as prescribed in this article or otherwise must be sworn, by an officer authorized by law to administer an oath,faithfully and fairly to hear and examine the matters incontroversy and to make a just award according to the best oftheir understanding. * * *" The oath may be waived, but the obligation remains. Although a known interest does not disqualify and the parties may not complain merely because the arbitrators named were known to be chosen with a view to a particular relationship to their nominator or to the subject-matter of the controversy, they are entitled to expect that arbitrators thus chosen will proceed with indifference and impartiality. *Page 406 
Viewed with this background, the law forbids the arbitrator, even though he acts with good intentions, so to conduct himself as to defeat the purpose of the arbitration by acting either for his own convenience or in the supposed interests of the party by whom he is named, except as he has, under Civil Practice Act, section 1453, the naked power to withdraw before all the proofs and allegations are heard. (Matter of Bullard v. Grace Co.,240 N.Y. 388, decided herewith.) He accepts responsibilities to which convenience and favor must defer. We may assume that Mr. Osborn's conduct was inspired by the best of reasons and with no intention to frustrate the arbitration for ulterior ends. Another might follow the same course of conduct that he followed with an eye single to his own convenience or the interest of his nominator to avoid an adverse decision. Such an untoward result should be avoided unless the law applicable to arbitrations permits the arbitration to be brought to so impotent a conclusion.
The provisions of the Civil Practice Act so far as practicable and consistent apply to arbitration agreements. Material provisions are as follows:
"§ 1451. Hearings by arbitrators. Subject to the terms of the submission, if any are specified therein, the arbitrators selected as prescribed in this article must appoint a time and place for the hearing of the matters submitted to them, and must cause notice thereof to be given to each of the parties. They, or a majority of them, may adjourn the hearing from time to time upon the application of either party for good cause shown or upon their own motion, but not beyond the day fixed in the submissionfor rendering their award, unless the time so fixed is extendedby the written consent of the parties to the submission or theirattorneys."
"§ 1453. Power of arbitrators. The arbitrators selected either as prescribed in this article or otherwise, or a majority of them, may require any person to attend *Page 407 
before them as a witness; and they have, and each of them has, the same powers with respect to all the proceedings before them which are conferred upon a board or a member of a board authorized by law to hear testimony. All the arbitratorsselected as prescribed in this article must meet together andhear all the allegations and proofs of the parties; but an awardby a majority of them is valid unless the concurrence of all isexpressly required in the submission."
The scheme of the law thus divides the arbitration proceedings into two parts: (a) the hearing, and (b) the decision and award. All the arbitrators must hear the allegations and proofs of the parties but an award by a majority of them is valid unless the submission otherwise provides. Even when prior to the enactment of the Arbitration Law of 1920 agreements to arbitrate and submissions were arbitrarily revocable up to a certain stage in the proceedings, the Code of Civil Procedure, section 2383, drew the line thus indicated between the hearing and the award. It read: "A submission to arbitration * * * cannot be revoked by either party, after the allegations and proofs of the parties have been closed, and the matter finally submitted to the arbitrators for their decision." Now that agreements to arbitrate are no longer revocable at the will of a party but may be enforced by a party who is aggrieved by a refusal to proceed to arbitration, this limitation no longer has a place in the law and has been repealed, but it is significant that even under the earlier practice a party who stayed in until the final submission to the arbitrators for their decision could no longer trim his sails to shift his course when the wind of defeat began to rise.
At common law more latitude was allowed as to the hearing. Where the submission was to three with power to two to make the award, two had power to hear where the third was notified and refused to attend or was willfully absent (Crofoot v. Allen,
2 Wend. 494), but by the Revised Statutes (now Civil Practice Act) all the *Page 408 
arbitrators were required to hear all the proofs and allegations of the parties, otherwise the award was a nullity. (Bulson v.Lohnes, 29 N.Y. 291.) No further change was made in the common law. It is not said that all the arbitrators must participate in making the award. That is an exception to the general rule which may be expressly stipulated for by the parties. All the arbitrators should be notified to meet for deliberation so that opportunity for full consultation is furnished but it is not the rule that one may then by wilful absence, — and resignation at this stage is no less than wilful absence, — prevent an award by a majority. All should meet and hear the proofs but the report of two is valid unless the third has been excluded from participation in their deliberations without fault on his part. The refusal of the third arbitrator to attend after final submission ceases to be material when its effect would be to juggle one of the parties out of the benefit of the arbitration. (Carpenter v. Wood, 42 Mass. 409.) If an arbitrator may resign at the last moment, if concert of action in reaching a decision as distinguished from the award itself is necessary, no award could be reached in any case if at the eleventh hour one of the three found himself in the minority and sought to serve his own interests or those of the party naming him by resigning. The law does not contemplate that the edifice thus elaborately raised should be toppled over by such an untimely explosion from within. The salutary purpose of an arbitration is the summary and extrajudicial settlement of controversies between parties. The court should pause before permitting a technical and strained construction of the law or the agreement of the parties to defeat that purpose. If the law or the parties contemplate the possibility of an endless chain of frustrated arbitrations or the summary termination of the submission when the pen is in the hand of two of the arbitrators to sign an award, the meaning should be unmistakably expressed. It is highly improbable that *Page 409 
any arbitration agreement or submission to arbitration would be made if it would involve the parties in such absurd consequences. Laws should be construed sensibly and plain purposes should not be defeated by narrow interpretations.
It follows that the withdrawal of one of the arbitrators on the threshold of a formal award does not end the authority of the other two unless the terms of the arbitration submission take the case out of the general rule governing majority awards. The arbitration agreement and the Civil Practice Act should be read in harmony where harmony is possible. Literally, the agreement provides that if an arbitrator ceases to act a substitute arbitrator shall be chosen. But the substitute clause need not be read so crabbedly as to permit an unreasonable result in flat contradiction of the common and statute law. The letter should be enlarged within legitimate bounds, rather than limited, when the end in view may thereby be more effectually accomplished.
Under a fair and equitable interpretation of the submission agreement, a vacancy caused by the withdrawal of an arbitrator need not be filled after the case has been heard, considered and practically decided. The withdrawal at that point does not prejudice the rights of the parties to a hearing before a full board and an award by a majority or make necessary a rehearing of all the allegations and proofs of the parties before a substitute arbitrator.
The orders should be reversed, with costs in all courts, and application to confirm award granted, with ten dollars costs.