In the Matter of the Arbitration between Harry P. Friedman, Appellant, and Morris A. Friedman, Respondent.

First Department, January 15, 1926.

**Arbitration — disqualification of arbitrator — arbitrator by asking for and accepting loan from one of parties immediately became disqualified and award made thereafter is void — bias and prejudice of arbitrator, if shown, is ground for refusing confirmation of award — objecting party did not waive rights by receiving and accepting check from arbitrators at time of award — arbitrators acted beyond powers granted by submission in giving check — furthermore check was against fund not in controversy and represented amount unquestionably due said party — inadvertent cashing of check without knowledge of possible legal effect did not constitute waiver of objection to award.**

An arbitrator acting under a contract for arbitration who asks for and accepts a loan from one of the parties to the arbitration proceeding immediately becomes disqualified and any award made by the arbitrators thereafter is void.

Furthermore, bias and prejudice on the part of one of the arbitrators against one of the parties, if true as alleged in the affidavit presented in opposition to the confirmation of the award, would be good ground for refusing to confirm the award.

The party objecting to the award did not estop himself from making the objection or waive any of his rights by receiving and accepting a check from the arbitrators at the time the award was made, since the act of the arbitrators in issuing the check was beyond their powers as outlined by the submission, and furthermore, the check in question was against a fund representing rents which fund was not in controversy, and a part of which, represented by the check, the party unquestionably had the right to receive.

The mere act of the party in cashing the check inadvertently without knowledge of the possible legal effect of his act, did not constitute a waiver of his right to object to the award.

APPEAL by Harry P. Friedman from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 18th day of November, 1924, granting a reargument and confirming an award, and also from a judgment entered in said clerk's office on the 22d day of January, 1925, pursuant to said order.

*Jacob Gordon* [*Alfred R. Page* of counsel], for the appellant.

*Benjamin Siegel* [*Daniel Day Walton* of counsel], for the respondent.

MERRELL, J. The facts surrounding this controversy are as follows: Harry P. Friedman and Morris A. Friedman are brothers and had been engaged in business as copartners under the firm name and style of the Friedman Company. A corporation had also been formed, known as the Prince Knitting Mills Co., Inc., and in which the brothers each owned one-half of the capital stock. The corporation was carried on in the same manner as the copartnership between the brothers, each of whom was equally interested in both the copartnership and the corporation. It was determined to close the affairs of both organizations. Certain controversies arose between the brothers which they agreed to submit to arbitration, and an arbitration agreement was executed between them wherein they agreed to submit their differences to three arbitrators, namely, Nathan Schweitzer, David Schwartz and William H. Friedman. Schweitzer was selected by Harry P. Friedman, while Morris A. Friedman chose David Schwartz as an arbitrator. The two arbitrators selected William H. Friedman, a cousin of the parties, as the third arbitrator. By clauses of the arbitration agreement marked " second " and " third " it was expressly agreed:

" *Second.* The parties hereto agree to get to work on this investigation immediately, and Morris A. Friedman and Harry P. Friedman agree from this date not to pay out to themselves any of the funds now in hand or to be received by the Prince Knitting Mills Co., Inc., and the Friedman Company, and Harry P. Friedman agrees to notify all persons to pay any of the funds of the aforesaid corporations to the Arbitrators above named.

" *Third.* It is furthermore agreed that no moneys whatsoever shall be paid out excepting only undoubted obligations, which are just debts of the companies to parties not connected with Morris A. Friedman in any manner whatsoever, and Harry P. Friedman agrees to do likewise."

By the 6th article of the agreement it was provided as follows:

" *Sixth.* It is distinctly understood and agreed by and between the parties hereto that they, and each of them will pay any amount so found by the award made by at least two of the Arbitrators above named, the parties hereto do covenant and agree to and with each other pursuant to the provisions of Article 84 of the Civil Practice Act of the State of New York, that a judgment in a Court of Record, to wit, the Supreme Court of the State of New York, in and for the County of New York, shall be entered upon the award made pursuant to their submission, thirty days after such award."

After hearing the claims of the parties, on January 30, 1924, two of the arbitrators, David Schwartz and William H. Friedman, made and filed in the office of the clerk of the county of New York an award. Nathan Schweitzer, the third arbitrator, vigorously dissented from such award upon the ground that the arbitrators had ignored the report of accountants employed by them. It appeared from the affidavit of Schweitzer in opposition to the motion to confirm the award that his refusal to concur with the findings of his fellow-arbitrators was chiefly by reason of the partiality of one of the arbitrators, William H. Friedman, toward Morris A. Friedman, one of the contending parties. In his affidavit Schweitzer avers that his fellow-arbitrator, William H. Friedman, informed him time and again that Harry P. Friedman was not entitled to a dollar; that he knew Morris A. Friedman to be honest, and that all the testimony in the world would not convince him that Morris A. Friedman would do anything wrong. Schweitzer, in his affidavit, charges William H. Friedman with unfairness, injustice and prejudice against Harry P. Friedman; and that the award which was signed by the two arbitrators was the result of such prejudice and was without foundation of fact; that said arbitrator William H. Friedman favored Morris A. Friedman, showing evident partiality, and that he did not care to listen to any logical arguments in behalf of Harry P. Friedman.

In opposition to the confirmation of the report of the arbitrators it was charged in the affidavit filed by Harry P. Friedman that William H. Friedman was incompetent and ineligible to act as an arbitrator because of the fact that while so acting he became indebted to Morris A. Friedman, one of the parties, in large sums of money; and that prior to the filing of the award Morris A. Friedman had indorsed notes and loaned his credit to William H. Friedman; and that at all times while acting as an arbitrator the said William H. Friedman was a debtor of Morris A. Friedman, all without the knowledge of the said Harry P. Friedman until

shortly before making his affidavit in opposition to a confirmation of the award. Replying to such charges, Morris A. Friedman made affidavit, and in support of his application for confirmation, denied the making of a number of loans, or that he had indorsed notes and obtained credit for William H. Friedman. Morris A. Friedman, however, admitted that on July 6, 1923, he made a personal loan to William H. Friedman in the sum of $5,000, taking the note of said William H. Friedman therefor. He attempted to explain such loan and the taking of said note by stating that William H. Friedman had represented to him that he and his brother Harry J. Friedman were about to enter into a business enterprise, and that he needed the money to invest in that business; and that just prior thereto he had asked Harry P. Friedman for a loan of $5,000 from the funds of the Friedman Company, then under the control of the arbitrators, and that the said Harry P. Friedman had consented to such loan, and had so informed the said William H. Friedman by letter, a copy of which he sent to said Morris A. Friedman; that said Morris A. Friedman also consented to such arrangement, but upon the matter being brought to the attention of Schwartz, one of the arbitrators, he declined to consent thereto; that a few days thereafter Harry P. Friedman had sailed for Europe, and that it was impossible to take any further steps to secure a loan from the arbitration fund; that thereafter the said Morris A. Friedman had personally advanced the $5,000 to William H. Friedman. William H. Friedman, in his affidavit, admitted the receipt of the $5,000 from Morris A. Friedman for use in his business, but claimed that said $5,000 loan was the only loan that he had made from Morris A. Friedman since his appointment as arbitrator.

Under such admissions the justice to whom the motion to confirm the award of the arbitrators was addressed, first denied the motion and vacated the award by an order entered April 9, 1924. Subsequently the learned justice entertained an application for a reargument, and upon the reargument vacated his previous order denying confirmation and granted an order confirming the award. The ground upon which the court below reversed its prior action and finally confirmed the award was that Harry P. Friedman, after said award had been made wherein as a part thereof he was awarded the sum of $891.25, had accepted and cashed a check given him for said amount. (*Matter of Friedman*, 123 Misc. 809.) As a matter of fact, when the copy of the award of the arbitrators was left at the residence of Harry P. Friedman on January 29, 1924, it was accompanied by a check payable to his order and signed: " The Friedman Co. David Schwartz, W. H. Friedman," for the amount

awarded to him, namely, $891.25. On March 20, 1924, the check was certified and on April 1, 1924, Harry P. Friedman received the avails thereof. The court below held that in accepting the amount thus given him Harry P. Friedman waived any objection to the award and was bound thereby. I am of the opinion that the court erred in holding that, by receiving the amount aforesaid, the award, which prior to that time was without validity, became effective, and that Harry P. Friedman thereby waived all right to object thereto.

I am of the opinion that because of asking and receiving from one of the parties, namely, Morris A. Friedman, the loan of $5,000 during the pendency of the arbitration, the arbitrator William H. Friedman became disqualified from serving further as arbitrator. The law is well settled that arbitrators exercise judicial functions, and while not *eo nomine* judges, they are, in fact, judicial officers and bound by the same rules as govern such officers (*Matter of A. E. Fire Ins. Co.* v. *N. J. Ins. Co.*, 240 N. Y. 398, 405). In *Fudickar* v. *Guardian Mutual Life Ins. Co.* (62 N. Y. 392) it was said (at p. 399): " The arbitrator is a judge appointed by the parties; he is by their consent invested with judicial functions in the particular case; he is to determine the right as between the parties in respect to the matter submitted, and all questions of fact or law upon which the right depends are, under a general submission, deemed to be referred to him for decision. The court possesses no general supervisory power over awards, and if arbitrators keep within their jurisdiction their award will not be set aside because they have erred in judgment either upon the facts or the law." And as was said in *Matter of Fletcher* (237 N. Y. 440, 447), referring to provisions of law with reference to arbitration proceedings: " These provisions are appropriate to proceedings where parties substitute judges of their own choice for judges chosen by the State in the determination of disputes otherwise cognizable by the courts alone * * *." It was said in *Oakley* v. *Aspinwall* (3 N. Y. 547, 552): " The law and the reasons which uphold it apply to the judges of every court in the State, from the lowest to the highest." In the *Aspinwall* case it was argued that respondent, having requested the judge to sit, could not thereafter object. This contention was dismissed on the ground that jurisdiction could not be conferred by consent. And further the Court of Appeals said: " But where no jurisdiction exists by law it cannot be conferred by consent — especially against the prohibitions of a law, which was not designed merely for the protection of the party to a suit, but for the general interests of justice."

Common honesty of purpose on the part of the arbitrator

William H. Friedman should have prompted him, immediately upon receiving favor at the hands of one of the interested parties, to withdraw from further participation in the arbitration proceedings. In my opinion the moment he received the loan from Morris A. Friedman he lost all jurisdiction to serve as an arbitrator. From that time on his every act was absolutely void. (*McCormick v. Walker*, 158 App. Div. 54.) Notwithstanding the fact that the loan from one of the interested parties might have been granted without any ulterior motive, and while the same may have been made and accepted in good faith, nevertheless, from that time foward the beneficiary of the favor was disqualified to sit as a judge in the proceeding. Every litigant is not only entitled to present his claims to an impartial judge, but to one who by no act on his part has justified a doubt as to his impartiality. There can be no doubt but what a judge in accepting so substantial a favor from a litigant is at once shorn of all jurisdiction to decide the claims of such litigant against another. I am of the opinion that the arbitrator having been thus disqualified to sit in the case, every proceeding before him thenceforward was utterly void. As was said in *People v. Whitridge, No. 2* (144 App. Div. 493, 495): " If the justice was in fact disqualified to sit in the case the whole proceeding before him was utterly void. He was incompetent to try the case, and equally incompetent to make any order in it, including an order setting aside his own void proceedings. There stood, therefore, the record of a trial apparently regular, but actually a nullity." It was said in *Matter of City of Rochester* (208 N. Y. 188, 193): " The rule that the courts should zealously secure to all the parties in actions or proceedings submitted to them an unbiased hearing and decision should be as rigidly adhered to in a proceeding affecting the right to own and enjoy property as in an action in a duly constituted court. The exercise of the right of eminent domain involves a hearing upon notice to the parties interested, the receiving and weighing of evidence, a determination based upon the evidence, is judicial in character and the commissioners of appraisal should not have an interest, as the law defines the word, in the proceeding." And in *Wilcox v. Royal Arcanum* (210 N. Y. 370, 378) the court said: " While the statute (2 R. S. 275, § 2, now Judiciary Law, § 15)* only applies to judges *eo nomine*, an anomalous situation would exist if the disqualification on grounds universally recognized as sufficient of judges in a body like the Royal Arcanum presented a question merely of irregularity, although a decision of this court would be void if one of its members

---

* Since amd. by Laws of 1917, chap. 28.— [REP.

took part who was without his knowledge related within the sixth degree to one of the parties."

No distinction is made between relationship of consanguinity of a party to the judge and the relationship of debtor and creditor between a party and the judge. Every litigant is entitled to have his case heard and adjudicated by a fair and impartial tribunal without bias or prejudice, and when a judge places himself in such a position as to deny a litigant such right, the judge becomes disqualified. If blood or marital relationship disqualifies a judge from sitting in a case, far more so should the fact that the judge had received a financial favor from a party and had become the party's debtor disqualify him. This court has always been jealous of the impartiality of judicial officers whose acts were under review. In *Topia Mining Co.* v. *Warfield* (145 App. Div. 422) the late Mr. Justice SCOTT, writing for this court, said (at p. 423): " The court below was quite justified in removing the referee, and in view of the precedents in this court, could scarcely have done otherwise. (*Smith* v. *Dunn*, 94 App. Div. 429; *Fortunato* v. *Mayor, etc.*, 31 id. 271.) We do not attribute to the referee any improper motive in asking each party to the litigation before him to advance a sum on account of his fees. It was doubtless only injudicious, but it was none the less improper. Nor do we believe that the refusal or inability of one of the parties to make the proposed advance would, in fact, have prejudiced the referee against him. But the party so refusing might not be so certain, especially if the decision finally went against him. A referee stands in the place of the court, and it is as essential that litigants before him should be assured of his absolute impartiality as it is that litigants before the court should feel an assurance of its impartiality."

During recent years arbitration has been more and more resorted to for the settlement of business controversies. It, therefore, becomes of the utmost importance that in statutory proceedings of this character where the rights of parties are adjudicated, not by trained lawyers and judges, but by fellow-businessmen, every safeguard possible should be thrown about the proceeding to insure the utmost fairness and impartiality of those charged with the determination of the rights of the parties. Nothing should be permitted to throw suspicion even upon the entire impartiality of arbitrators. The finality of an award of arbitrators as compared with the reviewable decision of a judge or a referee makes this all the more important, and that the tribunal which is to pass upon the rights of the parties be not subject to the slightest suspicion as to its fairness. Not only was the conduct of the arbitrator, William H. Friedman, such as to disqualify him, but if the aver-

ments contained in the affidavit of his fellow-arbitrator Schweitzer are to be believed, Friedman throughout the course of the arbitration manifested the utmost bias in favor of the party who had befriended him, and refused to listen to argument or evidence in support of the claims of the opposing party. Under such circumstances, I am of the opinion that we should not acquiesce in a confirmation of his acts. I am of the opinion that Harry P. Friedman did not receive that impartial consideration to which he was entitled, and that the award which was made should never have been confirmed. In 5 Corpus Juris (at p. 63) the whole matter is summed up: " The first great requisite as to persons occupying the post of arbitrator is a judicial impartiality and freedom from bias. In undertaking to act as arbitrators they assume a quasi judicial position. It follows, therefore, that the existence of any facts which may operate to affect the impartiality of arbitrators will render such arbitrators incompetent to make a valid award, provided such facts were unknown to the complaining party, and in applying this principle it is not material that the bias arose subsequently to the submission."

I do not believe that the appellant waived his right to move to set aside the award by cashing the check sent to him by the arbitrators accompanying their award. In the first place, the award was absolutely void. It was more than voidable. It was made by a judge disqualified to act. Without his concurrence the award never could have been made. In making the payment the arbitrators transcended all authority given them under the submission. In fact, the submission agreement expressly provided " that no moneys whatsoever shall be paid out excepting only undoubted obligations, which are just debts of the companies to parties not connected with Morris A. Friedman in any manner whatsoever, and Harry P. Friedman agrees to do likewise." Notwithstanding this provision of the arbitration agreement, the arbitrators themselves assumed to make a payment of the sum awarded to Harry P. Friedman before the award had become effective by the entry of judgment under the Civil Practice Act. By the 6th clause of the agreement it was provided that the *parties* were each of them to pay any amount found due by the award, and that judgment should be entered pursuant to the provisions of article 84 of the Civil Practice Act. It was, therefore, the duty of the arbitrators to hear the matter submitted to them, take the evidence, and determine all controversies. Thereupon it was their duty to file their award in the office of the county clerk and deliver a copy thereof to each of the parties. This was all the arbitrators could do. With the performance of such acts their duties were

ended. Under the provisions of the Civil Practice Act it then remained for either party to move to confirm, or to vacate the award, and upon the granting of an order confirming, modifying or correcting the award, judgment might be entered with the same force and effect as a judgment in an action. Until the award was ratified by the court, it had no binding force or effect as an adjudication. (*Matter of Fletcher*, 237 N. Y. 440, 449.) The law is well settled that where arbitrators act beyond the scope of their authority, their acts are void and without effect. (*Matter of Conway*, 179 App. Div. 108.) In the case last cited the court said (at p. 111): "The awards of arbitrators under the Code provisions lead to judgments of the court. The arbitrators sit as a court, with no powers except those conferred by the written submission duly executed and acknowledged. If arbitrators decide a controversy not submitted to them in an instrument in writing as provided in section 2366 of the Code of Civil Procedure,* they lack power to make such award." In that case it was the contention that the failure to object to the want of authority at Special Term amounted to a waiver. With reference to that Mr. Justice DAVIS, expressing the unanimous view of this court, said (at p. 111): "I think the parties to a statutory arbitration have no power to make a waiver of this kind and thus confer power and jurisdiction upon arbitrators over subject-matter which they do not have under the written submission (*Matter of Walker*, 136 N. Y. 20; *Beardslee* v. *Dolge*, 143 id. 160, 165; *Matter of Caffrey*, 52 App. Div. 264; *People ex rel. Buckbee* v. *Biggs*, 171 id. 373, 380)."

It would, therefore, seem that in making the payment the arbitrators exceeded any possible authority vested in them.

Moreover, it appears perfectly plain from the papers on appeal that Harry P. Friedman was entitled to the moneys which he received, not at the hands of the arbitrators, but as rentals received by the arbitrators during the course of the proceedings under agreement of the parties made after the submission and which they held as trustees for the parties. These moneys were never subject to arbitration. The arbitrators, while the proceeding was pending, collected approximately $9,000 of rentals, and it was against such fund that they issued their check to Harry P. Friedman for $891.25, and awarded Morris A. Friedman $6,687.32. It is not denied by Morris A. Friedman but that the moneys thus received for rentals of the premises were agreed to be deposited with the arbitrators subsequently to the submission, and that there was no controversy between the parties as to the lease or

---

* Now Civ. Prac. Act, §§ 1448, 1449.— [REP.

the rentals, nor as to the amount received by the arbitrators therefrom, which, as before stated, was approximately $9,000. It further appeared that the amount paid to Harry P. Friedman came directly from this fund. The lease and rentals were at no time in controversy and were not referred to the arbitrators, and, as held by the court below, were held by them as trustees and not in connection with their duties as arbitrators. Harry P. Friedman, in any event, was entitled to the sum which he received out of the rentals held by the arbitrators irrespective of their determination of the matters submitted to them by the arbitration agreement. Where a party is entitled in any event to receive certain moneys, he is not required to tender back that which was paid to him, on seeking rescission. (*Gould* v. *Cayuga County Nat. Bank*, 86 N. Y. 75; *Kley* v. *Healy*, 127 id. 555.) The money which was paid to Harry P. Friedman by the check was money which was his due irrespective of the matters in controversy before the arbitrators. We do not think that by accepting such amount he was foreclosed from questioning the award. At most, waiver is a matter of intent, and where it appears, as it does in the case at bar, that the check for $891.25 was cashed by Harry P. Friedman inadvertently and without knowledge of the possible legal effect of his action, and without consciousness as to the questions which might arise because of his cashing said check, we do not think he thereby waived his right to object to the confirmation of the award. In our opinion the confirmation of the award would work a grave injustice and would be putting the stamp of approval upon the acts of a clearly disqualified judge. We do not think we should be astute to condone the conduct of the arbitrator in this case, or to approve of the judicial acts of one who during the pendency of the proceeding has accepted substantial favor at the hands of one of the parties.

We are, therefore, of the opinion that the judgment and order appealed from should be reversed, with costs, and that the order of the Special Term of April 9, 1924, which vacated the award and denied the motion to confirm, should be reinstated.

CLARKE, P. J., FINCH, MARTIN and BURR, JJ., concur.

Judgment and order reversed, with costs, and order entered April 9, 1924, granting motion to vacate award and denying motion to confirm the same, reinstated,