In the Matter of the Arbitration between DAVID ROSENBERG, Petitioner, and SAMUEL A. WOLFE, Respondent.

Supreme Court, Special Term, Kings County, March 4, 1943.

*Isidore Slute* for petitioner.

*Roy Berlin* for respondent.

FROESSEL, J. Motion to confirm an arbitration award and for judgment thereon. Cross motion to vacate and set aside said award on various grounds.

The agreement to arbitrate discloses that "an altercation between the parties occurred on July 3, 1942 wherein verbal exchanges took place and blows were struck," as a consequence of which petitioner Rosenberg charged respondent Wolfe with simple assault. At the suggestion of the magistrate, the parties, who were adjoining neighbors, "agreed to submit and adjust their differences entirely through arbitration." Accordingly, the pending charge in the Magistrates' Court was withdrawn and "all claims, demands, disputes, differences or misunderstandings between the parties" were submitted to three arbitrators. Petitioner chose his uncle, respondent his brother-in-law, both laymen. These two arbitrators selected a lawyer as the third arbitrator. A two-hour hearing was held on the evening of December 7, 1942. At this hearing no minutes were taken and neither side was represented by counsel. The Arbitration Board (see Majority Report, ¶ XXII) "then dispensed with all the witnesses"; deliberations were commenced immediately thereafter and continued for a period of three hours. They resumed the following day for another two and one-half hours. Thereupon two of the three arbitrators made an award of $2,500 to petitioner, including in the award a recommenda-

tion that petitioner pay ten per cent of said award to a named charitable institution of excellent reputation, in whose very building the arbitration hearing was held, which institution was then conducting a campaign to pay off its existing mortgage. Both parties and all arbitrators were members of this institution, the lawyer arbitrator being chairman of one of its important committees. '' In view '' of the foregoing, the majority arbitrators stated that they waived their fees. The third arbitrator, respondent's designee, dissented, submitting his own minority report.

The majority arbitrators found, among other things, that respondent struck petitioner with his fist on the face, cheek and mouth, and punched petitioner in his abdomen with his closed fist, and that while respondent '' may have been incensed,'' the assault was, nevertheless, '' atrocious  *  *  * , unwarranted and unjustified.'' They further found that they '' did not have the advantage of professional medical testimony which would indicate the extent of Rosenberg's injuries, and whether these injuries are to remain permanent and how they would affect Rosenberg's future life, but it seemed clear to the arbitrators, nevertheless, that Rosenberg had received substantial injuries, of which he bore physical evidence up to the present time *  *  *.'' After reciting that there was a diversity of opinion as to the amount of damages, they finally awarded $2,500.

It will serve no useful purpose to discuss the numerous grounds urged by respondent to justify vacating the award here challenged. I am fully mindful of the duty of the court not to disturb an award except as provided in section 1462 of the Civil Practice Act; that arbitration proceedings are not to be discouraged and '' mere departure from formal technicalities without resulting injury is not sufficient cause under the statute to nullify an award '' (*Matter of Gerli & Co.* v. *Heineman Corp.*, 258 N. Y. 484, 488); that refusal to *consider* facts material to the controversy is likewise insufficient (*Matter of Bassett*, 241 N. Y. 610); nor is perjured testimony of the successful party or his witnesses sufficient. (*Jacobowitz* v. *Herson*, 268 N. Y. 130.) On the other hand, section 1462 of the Civil Practice Act does provide: '' In either of the following cases, the court must make an order vacating the award  *  *  *.

'' 2. Where there was evident partiality or corruption in the arbitrators or either of them.

'' 3. Where the arbitrators were guilty of misconduct *  *  * in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.''

I am thoroughly satisfied that there was no corruption here. There is, however, present a combination of circumstances which in my opinion requires the setting aside of the present award, not only under the provisions of the statute, but in the interests of justice as well.

In the first place, there is no basis for the damages awarded. Torts are not commonly referred to arbitration, but when they are there must be a proper basis for damages, as is the rule in contract cases. Section 1462-a of the Civil Practice Act provides that where there is " an evident miscalculation of figures " an award may be modified or corrected. Here we have an award of $2,500 — one of the two majority arbitrators, Ginsberg, who was Rosenberg's designee, and who seemingly could not disassociate his relationship from the latter, wanted to give $10,000 — without any medical proof to support it, and in a case where such proof was necessary. Of course, Rosenberg could testify with probative force as to his bleeding and swelling about his face but not that " the *doctor told him* that the reason the swelling on his cheek still exists was due to the fact that a nerve was injured, and that he had been *further advised by the doctor* that Rosenberg's hearing had been impaired as a result of the injury * * *." (Italics mine.) (Majority Report, ¶ XII.) It is true that two prescriptions were offered in evidence, now claimed to be for mild sedatives merely, but apparently no one could read them. Three doctors' certificates were received: (1) Dr. Lowen's, who saw Rosenberg more than three months later concerning an alleged diminution of hearing, but no causal connection with the alleged assault is shown; (2) Dr. Ferber's, who saw Rosenberg the day after the alleged assault concerning alleged " acute urinary retention," but again no causal connection is shown; (3) Dr. Tesler's, who saw Rosenberg on the day of assault and merely stated: " He was suffering from swelling of left cheek and general nervous condition." Another certificate by a dentist stated that Rosenberg's " face showed a marked swelling and the teeth involved in this area were mobile and showed signs of recent trauma," adding that treatment reduced the swelling and tightened the teeth. On respondent's behalf the ambulance interne, who saw Rosenberg on the day of the assault, was called. This witness saw " swelling on his face and the bleeding from his mouth," recommended cold and hot applications, and stated that " Rosenberg did not seem seriously injured."

The alleged urinary retention and diminution of hearing on the part of Rosenberg, whom one of his witnesses described as

a "sickly old man," were not observable by the arbitrators, nor could they as laymen connect these injuries with the alleged assault. The physicians' certificates could not be cross-examined. It is indeed doubtful whether anyone paid any attention to them, for Ginsberg in his affidavit stated: "At no time during the said hearing did Dr. Wolfe, Mr. Freedman or anyone else ask to inspect the certificates of the various doctors submitted."

The majority arbitrators recognized this situation by referring to the fact that they "did not have the advantage of professional medical testimony" as hereinbefore referred to, but simply stated that it *seemed clear* to them, nevertheless, that Rosenberg had received substantial injuries. (Fourth finding.) The minority arbitrator insists that he demanded, soon after the witnesses were dispensed with, that the arbitrators require such proof. The majority arbitrators admit this request but claim it was made after they indicated they would find against the respondent, which would be at the very time that the question of determining the amount of damages arose. It is true there is nothing in the record to show that the respondent himself offered such proof, but in any event damages must be fixed with some relation to the established injuries — the arbitrators are not empowered to make any award they please and without restrictions whatsoever.

I am of the opinion that under all the circumstances this "refusal to hear evidence pertinent and material to the controversy," evidence that was necessary as a foundation for the award, constituted serious prejudice to the respondent and justifies setting aside the award.

In *Van Cortlandt* v. *Underhill* (17 Johns. 405, 410) it was said: "If the arbitrators refuse to hear evidence pertinent and material to the matter in controversy, it is unquestionably such misconduct as will vitiate an award in a court of equity. * * * There is also another cause for setting aside an award, as exemplified by the *Butcher of Croydon's* case, for excessive damages. (3 Ch. Rep. 76. 2 Vern. 251. 1 Eq. Cas. Abr. 59.) The butcher had been called a bankrupt knave, and the arbitrators gave him 495 pounds, to repair his honour, and the Court of Chancery set aside the award. Upon this case I will merely remark, that I think it good law, if the damages were to be considered so enormous and exhorbitant as to induce a conviction, that the arbitrators must have been corrupt or grossly partial." (See, also, *Halstead* v. *Seaman,* 82 N. Y. 27, citing with approval the *Van Cortlandt* case.)

Section 1462 of the Civil Practice Act (formerly Civ. Prac. Act, § 1457; Code Civ. Pro. § 2374; Rev. Stat. of N. Y., part III, chap. VIII, tit. XIV, § 10) is more than " a century old, and during that time its meaning has been fixed by judicial decisions, repeated and consistent." (*Berizzi Co.* v. *Krausz*, 239 N. Y. 315, 319.) In the last-cited case it was held that the present Arbitration Act " does not call for a relaxation of restraints upon the conduct of the arbitrators insofar as those restraints have relation to the fundamentals of a trial and the primary conditions of notice and a hearing. Indeed, they are more important now than ever if arbitration is to attain the full measure of its possibilities as an instrument of justice."

There are other matters in this case that press for the granting of the cross motion.

The two arbitrators designated by the parties hereto were related to them. While " the practice of arbitrators of conducting themselves as champions of their nominators is to be condemned as contrary to the purpose of arbitrations and as calculated to bring the system of enforced arbitrations into disrepute " (*Matter of A. E. Fire Ins. Co.* v. *N. J. Ins. Co.*, 240 N. Y. 398, 405), the parties here expressly waived any objection to these relationships. The third arbitrator was unrelated to the parties and an attorney, who should have recognized the importance of medical testimony and given guidance to the other arbitrators, particularly in view of the fact that the parties were unrepresented by their own attorneys. This lawyer arbitrator was concededly hard of hearing, though he insists that with his hand cupped to his ear he was able to hear what transpired. He should not have permitted coupling with the award herein a recommendation that ten per cent thereof, or $250, be given to the institution in which he was so vitally interested, however worthy the cause, for it may not be said that such recommendation may not have had an influence or a bearing upon the amount of the award. Even where arbitrators act in good faith, " misbehavior, though without taint of corruption or fraud, may be born of indiscretion. This is abundantly established, not only by the adjudged cases, but also by the specific instances of misconduct enumerated by the statute in this very subdivision (cf. *Halstead* v. *Seaman*, 82 N. Y. 27, 30)." (*Berizzi Co* v. *Krausz*, 239 N. Y. 315, 318, *supra.*)

And as was said in *Matter of Friedman* (215 App. Div. 130, 136): " During recent years arbitration has been more and more resorted to for the settlement of business controversies. It, therefore, becomes of the utmost importance that in statutory

proceedings of this character where the rights of parties are adjudicated, not by trained lawyers and judges, but by fellow-businessmen, every safeguard possible should be thrown about the proceeding to insure the utmost fairness and impartiality of those charged with the determination of the rights of the parties. Nothing should be permitted to throw suspicion even upon the entire impartiality of arbitrators. The finality of an award of arbitrators as compared with the reviewable decision of a judge or a referee makes this all the more important, and that the tribunal which is to pass upon the rights of the parties be not subject to the slightest suspicion as to its fairness.''

Under all the circumstances I am of the opinion that the award should be and is hereby vacated and set aside, and a new hearing is directed before new arbitrators to be chosen in the manner provided in the submission. Accordingly, the motion is denied and the cross motion granted.

Settle order on notice.