**City of Erie v. Fraternal Order of Police, Hodge Memorial Lodge No. 7, City of Erie, Pa.**

*Joseph Walsh*, for petitioner.
*James Hanes*, for respondent.

McCLELLAND, J., September 30, 1971.—By agreement of counsel, I am authorized to write an opinion instead of the usual equity findings of fact, conclusions of law, decree nisi, et cetera.

The parties are before the court relative to a petition seeking to disqualify the appointment of John Harrington as an arbitrator because he is President of the National Fraternal Order of Police, of which defendant lodge is a member.

Under an act of assembly, collective bargaining by policemen is permitted and, upon reaching an impasse at the bargaining table, a board of arbitration may be appointed.

The statute, Act of June 24, 1968, 43 PS §217.1, provides that:

"The board of arbitration shall be composed of three persons, one appointed by the public employer, one appointed by the body of policemen or firemen involved, and a third member to be agreed upon by the public employer and such policemen or firemen."

"The determination of the majority of the board of arbitration thus established shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved": 43 PS §§217.4 and 217.7, quotations in part.

An annotation in 65 A. L. R., 2nd, 755-7, addresses itself to this subject saying:

"Since arbitrators are selected, not as agents of the parties, but to act in a quasi-judicial capacity in place of a court, they must ordinarily be impartial and nonpartisan so as to render exact justice to the parties. Anyone unable, by reason of interest or bias, to act impartially in the proceedings and to render a fair and just award, is ineligible to the office. An interest or bias to disqualify may be small, but it must be direct, definite, and capable of demonstration,

not remote, uncertain, or speculative. A person is disqualified to act as an arbitrator if he is himself a party to the dispute, and may be disqualified if he is a close relative, servant, employee, or agent of one of the parties, or has any secret interest in the result or decision of the dispute.

"Arbitration statutes generally provide for vacating an award on grounds of interest, bias, or fraud of an arbitrator, but are silent as to a remedy in advance of an award.

". . . Accordingly, it has generally been held in actions arising under arbitration statutes that the court has no power to intervene until after an award has been made by the arbitrators, although a contrary result has been reached where intervention has been sought under the general equity powers of a court.

". . . In actions which invoked the general equity powers of a court, it has been held that an arbitrator may be removed for bias or prejudice, and that the arbitration proceedings may be stayed or suspended until a new arbitrator has been appointed."

The requisite impartiality required of arbitrators has been best summarized in 5 Am. J. 2d, pp. 595, 596, as follows:

"If parties are to be encouraged to arbitrate, arbitration proceedings must be conducted with the same degree of impartiality as the courts afford. Public policy requires, therefore, that arbitrators not only be completely impartial but also that they have no connection with the parties or the dispute involved which might give the appearance of their being otherwise. Obviously a person is disqualified to act as an arbitrator if he is himself a party to the dispute. And, in the ordinary case, a close relative, servant, employee, or agent of one of the parties to

the controversy, or one who has any secret interest in the result or decision thereof, may not properly act as an arbitrator. An arbitrator is legally disqualified to act if he has a pecuniary interest in the relief sought, if this fact is not known to the party adversely affected. And a corporate officer may not act if his corporation has a pecuniary interest in the outcome of the arbitration and this interest is unknown to one of the parties.

"Mere personal friendship with one of the parties is no disqualification, nor is the fact that the person named as arbitrator has been counsel in previous litigation, has frequently acted in a similar capacity in like cases for others or for the party appointing him, or is a creditor of one of the parties. And the mere fact that there is some business relationship between the arbitrator and one of the parties to the arbitration is not in and of itself sufficient to disqualify the arbitrator. But although, as a matter of law, the relations above mentioned do not automatically, or as a matter of law, disqualify a person as an arbitrator, in a proper case they may be examined in connection with other circumstances on the question of fraud or misconduct and in determining as a matter of fact whether he is a disinterested or impartial arbitrator . . ."

To the same effect, see 6 C. J. S., Arbitration and Award, §46.

A leading case in Pennsylvania is Munson v. Dury Clothing, 33 D. & C. 2d 450 (1964). President Judge Pinola, of Luzerne County wrote the opinion. The Munson case stands for the proposition that an officer and shareholder of a corporation who participated upon behalf of the corporation in discussions involving a controversy is not qualified to act

as an arbitrator in a proceeding to resolve the controversy.

Among other things, Judge Pinola said:

"The judicial mind is so strongly against the propriety of allowing one of the parties, or its special representative to be judge or arbitrator in its own case, that even a strained interpretation will be resorted to if necessary to avoid that result: Kelly v. Trimont Lodge, 154 N. C. 97, 69 S.E. 764." See Munson Case, page 452.

Hanley v. City of Bradford, 50 D. & C. 2d 152 (1970), relies upon Munson and ruled the City Manager of Bradford ineligible to sit as an arbitrator in a dispute involving said City of Bradford.

However, the Chester County court refused to disqualify the client of a party's attorney as an arbitrator: Kent v. Tripodi, 13 Chester Co. R. 124 (1965).

In this particular case, the City of Erie relies upon the older view that each member of an arbitration panel must be completely neutral and impartial. The older view is heavenly in concept but rather unrealistic in practice. Obviously, in a tripartite arbitration selection such as the city and police used here, each side is attempting to obtain an arbitrator who will, at least, listen to its point of view in a friendly fashion. I am not proclaiming that the arbitrator selected by the city or police would be anyone but a splendid person. I am suggesting that, realistically speaking, the arbitrator might think, feel and act a bit like the people who selected him.

Frankly, when each arbitrator can select a third and obviously neutral arbitrator, I see nothing terribly wrong with this procedure.

Recent cases "recognize that in a tripartite arrangement, where each party to a dispute is given the

right to select an arbitrator and the third member is selected by them or by a disinterested party, the arbitrator selected by the disputants cannot be expected to play a wholly impartial part. They are partisans once removed from the actual controversy . . ." See opinion of Judge Dawson in Stef Shipping Corp. v. Norris Grain Co., 209 F.Supp. 249, 253 (1962).

The New York courts seem to represent the new and more liberal view. For example, Olsen v. Village of Cazenovia, 306 N.Y.S. 2d 560 (1970), held that a known interest does not disqualify an arbitrator and that a party may not complain merely because an arbitrator was chosen with a view to a particular relationship to one party or to the subject matter of the controversy.

Also, the United States District Court for the Southern District of New York, in Petition of Dover Steamship, 143 F. Supp. 738 (1958), decided that where an arbitration agreement provides for each party to select an arbitrator and that such arbitrators shall select a third, designation, by the parties themselves, of arbitrators who may not be completely disinterested is generally accepted practice. Judge Herlands wrote, at page 741, that "in such case, it is quite frankly recognized that the 'neutral' arbitrator is the one selected by the parties' arbitrators."

The Court of Appeals of New York decided the leading case in this field, to wit, Astoria Medical Group v. Health Insurance Plan, 11 N.Y.2d 128; 182 N.E.2d 85 (1962). Therein, Judge Fuld wrote:

"The intensely practical question presented by this appeal revolves about the attempt of one party to a typical tripartite arbitration agreement to have the court intervene, before an award has been made, and

disqualify the arbitrator designated by the other party because of his asserted personal interest and partiality.

"This type of tripartite arbitration provision, requiring each side to name its own arbitrator and such party-designated arbitrators to agree upon a third neutral arbitrator, is one which has been widely used in both labor and commercial arbitration. (See Bell Aircraft Corp., 13 L.A. 813, 820-821; Lesser, Tripartite Board or Single Arbitrators in Voluntary Labor Arbitration?, 5 Arb.J. [(N.S.)] 276; Phillips, A Lawyer's Approach to Commercial Arbitration, 44 Yale L.J. 31, 47; Pirsig, The New Uniform Arbitration Act, 11 Business Lawyer [April, 1956] 44, 47; Note, The Use of Tripartite Boards in Labor, Commercial, and International Arbitration, 68 Harv. L. Rev. 293, passim.) Arising out of the repeated use of the tripartite arbitral board, there has grown a common acceptance of the fact that the party-designated arbitrators are not and cannot be 'neutral,' at least in the sense that the third arbitrator or a judge is. And, as might be expected, the literature is replete with references both to arbitrators who are 'neutrals' and those who are 'partial,' 'partisan' or 'interested' and to arbitration boards composed entirely of 'neutrals' and those contrastingly denominated 'tripartite in their membership.' (Elkouri & Elkouri, How Arbitration Works [Rev. ed., 1960], p. 48; also, pp. 53, 61; see, also, Lesser, Tripartite Boards or Single Arbitrators in Voluntary Labor Arbitration?, 5 Arb.J. [N.S.] 276, 279; Phillips, A Lawyer's Approach to Commercial Arbitration, 44 Yale L.J. 31, 47-48; Taylor, The Arbitration of Labor Disputes, 1 Arb.J. [N.S.] 409, 413.)

"In short, usage and experience indicate that, in the type of tripartite arbitration envisaged by the contract before us, each party's arbitrator 'is not individually

expected to be neutral' (Second Preliminary Report of Advisory Committee on Practice and Procedure [N.Y. Legis. Doc., 1958, No. 13], p. 146; see also, Pirsig, The New Uniform Arbitration Act, 11 Business Lawyer [April, 1956] 44, 48; Phillips, A Lawyer's Approach to Commercial Arbitration, 44 Yale L.J. 31, 47).

"In fact, the very reason each of the parties contracts for the choice of his own arbitrator is to make certain that his 'side' will, in a sense, be represented on the tribunal.

"Our decision that an arbitrator may not be disqualified solely because of a relationship to his nominator or to the subject matter of the controversy does not, however, mean that he may be deaf to the testimony or blind to the evidence presented. Partisan he may be, but not dishonest. Like all arbitrators, the arbitrator selected by a party must (unless the requirement is waived) take the prescribed oath that he will 'faithfully and fairly . . . hear and examine the matters in controversy and . . . make a just award according to the best of [his] understanding' (Civ. Prac. Act, §1455). And, if either one of the party-appointed arbitrators fails to act in accordance with such oath, the award may be attacked on the ground that it is the product of 'evident partiality or corruption' (Civ. Prac. Act, §1462, subd. 2). Such an attack, however, must be based on something overt, some misconduct on the part of an arbitrator, and not simply on his interest in the subject matter of the controversy or his relationship to the party who selected him. (See Matter of Milliken Woolens [Weber Knit Sportswear], 9 N.Y.2d 878, 216 N.Y.S.2d 696, 175 N.E.2d 826; Matter of Lipschutz [Gutwirth], 304 N.Y. 58, 64-65, 106 N.E.2d 8, 11 supra; Matter of American Eagle Fire Ins. Co. v. New Jersey Ins. Co., 240 N.Y. 398, 148 N.E.

562 supra; Matter of Friedman, 215 App. Div. 130, 136-137, 213 N.Y.S. 369, 374, 375.)

"It may well be that there is greater danger that party-designated arbitrators will overstep the bounds of propriety than will those who are disinterested neutrals. But this risk, quite apart from being one to which the parties submitted, is thought by many to be more than offset by certain benefits gained from use of the tripartite board. One such benefit is that arbitrators selected by the parties are, generally speaking, experts on the subject in controversy and bring to their task a wealth of specialized knowledge. As one commentator has indicated, 'the expert guidance' furnished by 'partisan' arbitrators 'can be of assistance to the neutral member, who is not in a position to appreciate the problem and the fine points of its setting.' (Lesser, Tripartite Boards or Single Arbitrators in Voluntary Labor Arbitration?, 5 ARB.J. [N.S.] 276, 279; see, also, Bell Aircraft Corp., 13 L.A. 813, 820-821, supra; Note, 68 Harv.L.Rev. 293, 297 et seq.) Consequently, to disqualify an arbitrator because of his relationship to, or association with, his nominator would be to withhold from the arbitration board a source of the specialized knowledge which contributes to the unique value of the arbitration process. Moreover, any personal advantage to be derived from the power to select as arbitrator anyone he wishes is available to each party and, experience tells us, is ordinarily availed of by both."

I am in accord with these recent cases.

John Harrington has no direct connection with defendant. No attack of any sort has been made upon him except to assail the fact that he is President of the National Fraternal Order of Police. I would presume that John Harrington is a talented and decent man. I

am, therefore, being asked to disqualify him as an arbitrator because of his position per se. This, I will not do in a tripartite arbitration situation.

I am especially bothered not by the results which will follow this decision, but by the results which would follow a contrary decision.

Were I to disqualify the President of the National Fraternal Order of Police on that basis per se, where could I stop? The vice president, the secretary, any member, any policeman? The possibilities are endless and a bit absurd.

Thus, I enter the following

ORDER OF COURT

And now, September 30, 1971, the prayer of the petition of the City of Erie is denied, and John Harrington may act as arbitrator on behalf of the Fraternal Order of Police, Haas Memorial Lodge No. 7, City of Erie, Pa.