In the Matter of the Arbitration between J. P. STEVENS & Co., INC., Respondent, and RYTEX CORPORATION, Appellant.

First Department, February 22, 1973.

*Milton S. Teicher* for appellant.

*Melvin Beinart* of counsel (*J. J. L. Hessen* with him on the brief; *Hahn, Hessen, Margolis & Ryan,* attorneys), for respondent.

CAPOZZOLI, J. The usefulness and strength of the arbitration process is found in the fact that, generally, persons appointed as arbitrators are those with definite and important ties with the business world. Arbitrators do not ordinarily rely, for their livelihood, on fees received while serving as such. More often than not they are in the very business which has led to the controversy between the adverse parties and are selected because of their experience in that particular business.

Of course, irrespective of how knowledgeable and competent an arbitrator may be, he must " possess the judicial qualifications of fairness to both parties so that he may render a faithful, honest and disinterested opinion ". (*Matter of American Eagle Fire Ins. Co.* [*N. J. Ins. Co.*], 240 N. Y. 398, 405.) So, once again, this court is called upon to test the validity of an arbitration award in the light of the business relations between two of the arbitrators and the respondent.

In *Commonwealth Corp.* v. *Casualty Co.* (393 U. S. 145, 148–149) the court said: " It is true that arbitrators cannot sever all their ties with the business world, since they are not expected to get all their income from their work deciding cases, but we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review."

A fundamental requirement before one can qualify as an arbitrator is that he disclose any facts or information which might disqualify him as an impartial arbitrator.

Again, in *Commonwealth Corp.* v. *Casualty Co.* (*supra,* p. 149) the court said: " We can perceive no way in which the effective-

ness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." (Also, see, *Matter of Milliken Woolens [Weber Knit Sportswear]*, 11 A D 2d 166, affd. 9 N Y 2d 878; *Matter of Shirley Silk Co. [Amer. Silk Mills]*, 257 App. Div. 375.)

It is true that mere proof of prior business relations with a party is insufficient to disqualify an arbitrator where that relationship is known to the opposing party. "Thus knowledge, on the part of a party, of the existence of a disqualifying relationship between the opposition and an arbitrator, coupled with a failure to make timely objection, will be deemed a waiver of the right to press the objection. * * * Since waiver is a matter of intention * * * the touchstone in these arbitration cases is the knowledge, actual or constructive, in the complaining party of the tainted relationship or interest of the arbitrator." (*Matter of Milliken Woolens, supra,* pp. 168–169).

In *Matter of Friedman* (215 App. Div. 130, 136) the court said: "Nothing should be permitted to throw suspicion even upon the entire impartiality of arbitrators. The finality of an award of arbitrators as compared with the reviewable decision of a judge or a referee makes this all the more important, and that the tribunal which is to pass upon the rights of the parties be not subject to the slightest suspicion as to its fairness."

In the case at bar it appears from the affidavit of Jules J. L. Hessen, one of the attorneys for petitioner-respondent, that "in relation to the volume of business which J. P. Stevens & Co. Inc. [hereinafter called Stevens] does on an annual basis, its total annual business dealings with Kenyon and with Deering never amounted to more than approximately ¼ of 1% of its annual volume". Earlier, in the same affidavit, there appears the statement that the annual volume of business of Stevens is between eight hundred million to one billion dollars. On the basis of these facts respondent-appellant concludes, and justifiably so, that the sales to Stevens amount to approximately two and one-half million dollars annually. When it is considered that arbitrator Gerald Lincer is the sales manager of Kenyon, which sells to Stevens, one can understand the anxiety and dissatisfaction of the appellant. It is not difficult to believe that the appellant would have refused to accept Mr. Lincer as one of the arbitrators if the facts were made known to it.

In *Commonwealth Corp. v. Casualty Co. (supra,* p. 150) the court said: "This rule of arbitration and this canon of judicial ethics rest on the premise that any tribunal permitted by

law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias." (Also, see, the opinion by Mr. Justice McGivern, writing for the majority of this court, in *Matter of Baar & Beards (Oleg Cassini, Inc.)* (37 A D 2d 106, revd. on other grounds 30 N Y 2d 649.)

Under the rules of the American Arbitration Association, pursuant to which this arbitration was held, the arbitrators were under an obligation to disclose whatever relationship there existed with any party and any circumstances likely to create a presumption of bias.

It is true that there is no evidence of impropriety on the part of any of the arbitrators involved in this proceeding. However, this does not overcome the requirement that an arbitration tribunal must not only be unbiased, but must also avoid even the slightest appearance of bias.

In view of the conceded business activity between Kenyon and Deering, on the one hand, and Stevens on the other, we simply cannot agree with the dissent that " the relationship of which Rytex complains was, at most, remote, peripheral, superficial or insignificant ". As was stated by this court at pages 169 to 170 in *Matter of Milliken Woolens (supra)* " these purchases constituted a regular course of dealings running into transactions amounting to millions of dollars. They may not be regarded as the casual and occasional dealings which might be expected where arbitrators are chosen because of familiarity with an industry ".

The judgment appealed from should be reversed, on the law, with costs, and the arbitrators' award vacated. A new proceeding shall proceed before different arbitrators.

Stevens, P. J. (dissenting). I dissent and would affirm the judgment entered August 15, 1972, in New York County (Gellinoff, J.) which granted petitioner's application to confirm an arbitrators' award.

September 28, 1966, the parties entered into a written agreement under which Rytex Corporation (Rytex) was to perform certain services for petitioner, J. P. Stevens & Co., Inc. (Stevens). Under the agreement Rytex served as a consultant-print stylist for Stevens. Rytex claimed that Stevens wrongfully terminated the agreement and instituted an arbitration proceeding to recover damages for the alleged breach.

Of three arbitrators one, James T. Burnish, was mutually selected by the parties, and the two remaining arbitrators, Gerard J. Lincer and Philip J. Kaplan, were administrative appointments by the American Arbitration Association (AAA).

At the time Burnish was selected he was identified by the AAA as being employed by Deering Milliken, Inc. (Deering), and at the time of Lincer's appointment he was identified as being employed by Kenyon Piece Dye Works, Inc. (Kenyon). No objection was made by Rytex at that time and the arbitration proceeded.

Following upon the award in favor of Stevens, a motion to confirm the award was made by Stevens. Rytex cross-moved to vacate the award alleging, as it does on this appeal, that the award was not timely made and that it should be vacated because of bias or partiality on the part of Lincer and Burnish. The motion to confirm was granted and Rytex appeals from the judgment entered.

Rytex asserts that Stevens and Deering are large textile purchasers and that Burnish is employed by Deering. It asserts that Kenyon is a textile finisher and processor and that Lincer is the sales manager of Kenyon. The predicate for the charge of bias and prejudice is the fact that Deering and Kenyon do business with Stevens.

From the record it appears that Stevens is the second and Deering the third largest textile firm in the United States with thousands of employees and with plants and offices in various sections of the country. Kenyon is a large firm also. The affidavit of Stevens's counsel asserts, under oath, that neither Lincer nor Burnish is an officer, stockholder or owner of the respective firms by which they are employed. The affidavit of the vice-president of Stevens states unequivocally that neither Lincer nor Burnish called on or dealt with any of Stevens's personnel or had dealings with Stevens.

Rytex allegedly did not learn that Stevens did or had done business with Kenyon and Deering until after the award. Rytex bases its claim of bias upon its opinion that bias existed on the part of the two arbitrators by reason of their employment.

Rytex demanded arbitration on or about October 28, 1971. By letter dated December 29, 1971 the AAA notified the parties of the appointment of Kaplan against whom no complaint is made and Lincer employed "with Kenyon Piece Dye Works, Inc.", etc. Rytex made no objections. The hearing was held April 6, 1972, without objection. It was not until *after* the award that Rytex voiced any objection to Lincer, or to Burnish whom it had joined in selecting or approving. From the record it seems clear, as Stevens contends, that the relationship of which Rytex complains was, at most, remote, peripheral, superficial or insignificant and totally insufficient to warrant vacatur of the

award (*Matter of Perl* [*General Fire & Cas. Co.*], 34 A D 2d 748).

Rytex also accepted the arbitrators with their disclosed company affiliation (cf. *Matter of Baar & Beards* [*Oleg Cassini, Inc*], 30 N Y 2d 649).

It appears that in textile disputes arbitrators are drawn from relevant categories or sectors of the textile industry, and that Winter, the president of Rytex, or its employees under the contract had access to the offices, facilities and personnel of Stevens. Since Winter apparently is experienced in the textile industry it is difficult to accept the contention of Rytex that it was totally unaware of any business dealings between Stevens, Deering and Kenyon.

The further contention of Rytex that the award was not timely made is without merit. It is clear that the award was executed within the time specified. Moreover, the objection of untimeliness was not raised until *after* receipt of copies of the award (CPLR 7507).

The judgment should be affirmed with costs.

McGivern, Kupferman and Lane, JJ., concur with Capozzoli, J.; Stevens, P. J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on August 17, 1972, reversed, on the law, petitioner's application denied, cross motion of respondent-appellant granted and the arbitrators' award vacated; and a new proceeding is to proceed before different arbitrators. Respondent-appellant shall recover of petitioner-respondent $60 costs and disbursements of this appeal.