In the Matter of the Arbitration between A. M. PERLMAN, INC., Respondent, and RAYCREST MILLS, INC., Appellant.

In the Matter of the Arbitration between RAYCREST MILLS, INC., Appellant, and A. M. PERLMAN, INC., Respondent.

First Department, December 16, 1952.

*Menahem Stim* of counsel (*Roy M. Cohn* and *Samuel Rubin* with him on the brief; *Curran & Stim,* attorneys), for appellant.

*George Trosk* of counsel (*Jesse Climenko* with him on the brief; *Gallop, Climenko & Gould,* attorneys), for respondent.

BREITEL, J. This is an appeal from the vacation at Special Term of an award in arbitration. The grounds therefor were misconduct and evident partiality by the arbitrators (Civ. Prac. Act, § 1462). The issues of fact raised on the motion to vacate the award had been submitted to a Referee who had rendered a detailed report. The order followed the report.

In the latter half of 1948, Raycrest Mills, Inc., sold various quantities of rayon greige goods to A. M. Perlman, Inc. The writings, consisting of five orders, contain broad provision for arbitration pursuant to the rules of the General Arbitration Council of the Textile Industry. After delivery and processing of the merchandise, Perlman contended that there were defects in the merchandise, claimed damages, and resisted payment of the balance of the price. An arbitration was held. The award was set aside on the ground that Perlman's counsel had been improperly excluded from the hearings. Raycrest thereupon brought on the second arbitration, the subject of this appeal.

The award was favorable to Raycrest, the seller. Of the three kinds of goods embraced in the five orders, the award granted certain allowances to Perlman, the buyer, as to two kinds of goods, and disallowed Perlman's claims as to the third. But even as to the two kinds of goods for which allowances were granted, the allowances were substantially less than those claimed by Perlman.

There were three arbitrators, one chosen by each of the contenders, and the third by the two party-selected arbitrators. All three men were on the industry panel of arbitrators, with long association in the industry, and varying lengths of experience in industry arbitration.

Perlman now claims that the two arbitrators other than the one chosen by him were evidently partial, failed to consider evidence they should have considered and considered matters that they should not have considered. The bulk of Perlman's proof, but not all by any means, comes from the lips of the arbitrator chosen by Perlman, one Schottland. The bulk of the proof, but again not all by any means, relates to transactions among the three arbitrators during the period that the arbitration hearings were pending.

The matters to which Perlman takes exception are briefly the following: 1. The prior arbitration was referred to by the association secretary at the first hearing; 2. The two " partial " arbitrators, over Perlman's objection, read the opinion of the court in setting aside the first arbitration award; 3. Sokol, the arbitrator chosen by his two colleagues, before testimony was

taken, remarked in the men's room to his colleagues that "This looks like a case of renege on Perlman's part. There seems to be nothing to this case" and he added something about a drop in the market; 4. Sokol and the arbitrator chosen by Raycrest, one Carvin, mistreated the Perlman-chosen arbitrator, in that they avoided having lunch with him, taxied to the hearings without him, held whispered conferences between themselves to the exclusion of the Perlman-chosen arbitrator, Schottland, and otherwise gave him the impression that he was not a fully participating arbitrator; 5. Sokol in pursuing his theory of motivation for Perlman's claims consulted his private memoranda with respect to the fall in the price of rayon following the making of the contracts in this case; 6. The arbitrators failed to examine more than a short piece of the rolls of goods left for inspection with the arbitrators; and 7. After Schottland resigned as an arbitrator, and before the award, there was a meeting before the arbitration council in which Perlman was put in the prejudicial position of questioning the partiality of the remaining arbitrators who were yet to make the award in the case.

It will quickly appear from the above recital of items, and it is amply confirmed by the testimony taken before the Referee that what blew up this arbitration was primarily the conflict between Schottland and his two fellow arbitrators. It is also apparent that the conflict turned not only on attitudes toward the case before them, but on their attitudes toward one another. It would seem to be a perilous process to make findings of partiality on the basis of accusations among fellow arbitrators, unless the proof is clear and convincing, if not indeed compelling. While perhaps we should not require of arbitrators the same strict rules that apply to the impeachment of a jury verdict, we may not travel too far from such rules. It should be evident that three laymen, not compensated, chosen from the industry, and chosen on a tripartite basis (a basis of doubtful desirability), and chosen because they know the parties and their industry problems, are not going to conduct the deliberative part of their proceedings with complete impersonality, well-chosen diplomatic language, or the forms of objectivity that are apt to attach to those to whom issue-determination is a vocation. No one assumes that even the jury room, presumably filled with disinterested persons, is a place of quiet and cool intellectual discussion. We pay a price for the advantages of arbitration, and this case well illustrates what that price is. But we should not destroy the advantages of arbitration to those who seek to

avail themselves of those advantages by permitting awards to be set aside easily because of the acrimony that may develop among arbitrators. This of course does not mean that the courts will not scan closely the behavior of arbitrators to make certain that the essence of impartiality is maintained.

We may now turn to the particular items of objection. It is unavoidable that on a second arbitration there should be some reference to the fact of the first arbitration. Indeed, being from the industry, some of the arbitrators had heard of the first arbitration, but were not sure whether the issues were the same. In any event, there was no prejudice, because Perlman went further, he inadvertently blurted out before the arbitrators that he had " lost " the first case. For the same reason the reading of the judicial opinion by the two arbitrators was not prejudicial, assuming that an impropriety was involved because of counsel's stipulation or for any other cause. *Moshier* v. *Shear* (102 Ill. 169), cited by Perlman, is quite distinguishable. In that case the arbitrator in the second proceeding discussed the issues at length and in detail with an arbitrator in the first proceeding, and the court found that he was influenced thereby.

Sokol's remark in the men's room, indicating a premature view of the facts, is on its face a more serious matter. Such a remark was injudicious. But it cannot be ignored that the human mind does not remain suspended in a vacuum while it struggles toward a decision. Rather it swings pendulum-wise from point of view to point of view. Hence, it is better not to talk until the time for speech has arrived. But Sokol's remark is not so much evidence of a prejudgment as it was an articulation of an impression. Moreover, the record shows the basis for the impression. The issue in the case, it was quickly evident, even before testimony was taken, was not so much whether the goods were defective as it was whether the allowances and damages claimed were justified by the defects in the goods, or were being used to recoup a drastic market loss. Sokol had a right to have a tentative impression, because a tentative impression may be unavoidable and because even rules of law cannot change the nature of the human mind. Propriety required that he not speak thereof even to his fellow arbitrators. Justice required that the impression not be a fixed prejudgment. There is nothing to indicate that his words presaged a fixed judgment, except by way of speculation and remote inference by an offended arbitrator and a disgruntled suitor.

The claimed mistreatment of Schottland by his fellow arbitrators requires slight comment. It proves little except conflict

among personalities. It is negatived somewhat in effect by the offer of Sokol and Carvin to resign as arbitrators when Schottland accused them of misconduct toward him and prejudgment of the case. Schottland's intemperate resignation before the award, but after the hearings, was a more serious act of misconduct by one who had assumed to sit in judgment on his fellows. (Matter of Amer. Eagle Fire Ins. Co. [N. J. Ins. Co.], 240 N. Y. 398.) It was the cause of the meeting before the arbitration council, no gain to Perlman.

With respect to Sokol's consultation of his momoranda on the price decline in rayon after the contracts were made, there again is no prejudice. He and his fellows were chosen for their knowledge of the industry and its economic structure and workings. It is not contradicted that there was a drastic decline in the price of rayon greige goods directly following the making of the last of these five contracts. Thus, in Matter of Gerli & Co. v. Heineman Corp. (258 N. Y. 484, 488), Judge O'Brien, speaking for the Court of Appeals, said: "Inadvertent misbehaviour, according to the strictest of all possible standards, perhaps there may have been, but have the rights of any party been prejudiced? Mere departure from formal technicalities without resulting injury is not sufficient cause under the statute to nullify an award." There is no claim here that Sokol's memoranda were other than confirmatory of the fact of market decline, which respondents in the arbitration were claiming was the cause of the buyer's losses and the stuff of his damage claim. (See, also, Berizzi Co. v. Krausz, 239 N. Y. 315, 320.)

The alleged failure to examine the entire rolls of goods left with the arbitrators is also without sufficient basis. In the first place, there is no requirement that has been called to our attention that every detail of evidence must be reviewed by a fact-finder. It is sufficient if the evidence is available. It is for the fact-finder to determine how much of the detail must be examined or considered. Moreover, the real issue here was not so much, as pointed out earlier, whether the defects were present, as whether the damages were inflated. Concededly, the printed merchandise had been resold by the buyer at a loss, but it was not so clear whether the resale price reflected defect or market drop in price. For example, in the largest quantity involved, Raycrest had granted before the arbitration a five cent a yard credit on account of the defect. The award reflects these considerations.

Another more difficult problem is presented by the meeting before the arbitration council. Schottland had resigned assign-

ing as a ground the misconduct and partiality of his fellow arbitrators. Before resigning he had presented his reasons to Perlman's counsel, consisting of much of the matter discussed here. The award had not been made, and these very issues were taken up before the council with all parties present. This, for Perlman, was indeed a difficult situation. But given the procedure for arbitration, the intemperate resignation by Schottland, and the necessity for determining whether to continue the arbitration with the two arbitrators under the industry rules or to add a substitute arbitrator, there was little choice. (See *Matter of Amer. Eagle Fire Ins. Co.* [*N. J. Ins. Co.*], 240 N. Y. 398, *supra; Matter of Bullard* [*Grace Co.*], 240 N. Y. 388.) The council weighed the accusations, made findings, and made the necessary direction for continuing with the two-man board of arbitration. So long as their findings were justified, as we find that they were, the action taken was proper.

Improper conduct charged to Perlman, including communications with the arbitrators during the arbitration, has not been discussed here. In no event could his impropriety of conduct have excused impropriety on the part of the arbitrators, if such had been the case.

The evidence does not support the factual inferences by the Referee and the evidence from any view does not support vacation of the award on the grounds of misconduct or partiality on the part of the arbitrators.

The fees allowed the Referee are grossly excessive. They should be reduced from $5,000 to $2,500, and together with reporting expenses of $1,793.35, should be borne equally by the parties to the reference.

Accordingly, the order at Special Term vacating the award should be reversed in all respects, with $20 costs and disbursements to appellant, and the motion to confirm the award should be granted, the fee of the Referee reduced to $2,500 and that fee and the reporting expense of $1,793.35, should be borne in equal shares by the parties to the reference.

PECK, P. J., DORE and CALLAHAN, JJ., concur.

Order of Special Term vacating the award unanimously reversed in all respects, with $20 costs and disbursements to the appellant, and the motion to confirm the award granted, the fee of the Referee reduced to $2,500 and that fee and the reporting expense of $1,793.35 to be borne in equal shares by the parties to the reference. Settle order on notice.