In the Matter of the Arbitration between AMERICAN EAGLE FIRE INSURANCE COMPANY et al., Respondents, and NEW JERSEY INSURANCE COMPANY, Appellant.

Arbitration — contract — practice of arbitrators of conducting themselves as champions of their nominators condemned — arbitrator should not by his conduct defeat purpose of arbitration — after final submission arbitrator may not by resignation prevent other two from making valid award unless terms of submission agreement take case out of general rule of majority award — provision, that if arbitrator ceases to act, a substitute shall be chosen, interpreted as not requiring filling of vacancy after case has been fully heard.

1. The practice of arbitrators of conducting themselves as champions of their nominators is to be condemned as contrary to the purpose of arbitrations and as calculated to bring the system of enforced arbitrations into disrepute. The oath of the arbitrators is the rule and guide of their conduct (Civ. Pr. Act, § 1452), and parties to a controversy are entitled to expect that arbitrators will proceed with indifference and impartiality. The law forbids the arbitrator, even though he acts with good intentions, so to conduct himself as to defeat the purpose of the arbitration by acting either for his own convenience or in the supposed interests of the party by whom he is named, except as he has, under section 1453 of the Civil Practice Act, the naked power to withdraw before all the proofs and allegations are heard. (Cf. *Matter of Bullard* v. *Grace Co.,* 240 N. Y. 388.)

2. After the final submission of an arbitration, one of three arbitramay not, by his resignation, prevent the other two arbitrators from making a valid award under a submission providing for an award by a majority and for the filling of vacancies in case an arbitrator resigns. The scheme of the law (Civ. Pr. Act, §§ 1451, 1453) divides the arbitration proceedings into two parts: (a) the hearing, and (b) the decision and award. All the arbitrators must hear the allegations and proofs of the parties but an award by a majority of them is valid unless the submission otherwise provides. It follows that the withdrawal of one of the arbitrators on the threshold of a formal award does not end the authority of the other two unless the terms of the arbitration submission take the case out of the general rule governing majority awards.

3. An arbitration agreement, which provides that if an arbitrator ceases to act a substitute shall be chosen, should, where possible, be read in harmony with the Civil Practice Act and the letter enlarged within legitimate bounds, rather than limited, when the end in view may thereby be more effectually accomplished. Under a fair and equitable interpretation of such an agreement, a vacancy caused by the withdrawal of an arbitrator need not be filled after the case has been heard, considered and practically decided. The withdrawal at that point does not prejudice the rights of the parties to a hearing before a full board and an award by a majority or make necessary a rehearing of all the allegations and proofs of the parties before a substitute arbitrator.

4. Where, therefore, after the taking of testimony and the submission of briefs, under an arbitration agreement providing that if an arbitrator shall cease to act the parties to the submission shall elect his successor, one of the arbitrators resigned for the alleged reason that he felt that he could not do justice to the case in the short time remaining within which a decision was required, an order of Special Term denying a motion to confirm an award of the remaining two arbitrators on the ground that, under the express provisions of the arbitration agreement, they were without power to act, is erroneous.

*Matter of American Eagle Fire Ins. Co.* v. *N. J. Ins. Co.*, 210 App. Div. 879, reversed.

(Argued June 1, 1925; decided July 15, 1925.)

Appeal, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 21, 1924, which affirmed an order of Special Term denying a motion to confirm the award of arbitrators herein and vacating said award.

The facts herein are as follows: In the year 1920, pursuant to an agreement made in the latter part of December, 1919, New Jersey Insurance Company, appellant, issued one or more policies of re-insurance to American Eagle Fire Insurance Company, The American Insurance Company, Fidelity-Phenix Fire Insurance Company, Glens Falls Insurance Company and Hanover Fire Insurance Company.

New Jersey Insurance Company refused to pay losses under the re-insurance policies, claiming that they were invalid because of alleged misrepresentation and concealment. Accordingly, under date of August 22, 1922, the parties executed an agreement and submission to arbitration in which the dispute as to the validity of the policies was submitted to three arbitrators. Two of the arbitrators, Mr. Osborn and Mr. Ullman, were named in the arbitration agreement, and the third arbitrator, Mr. Cox, was later appointed by written agreement between the parties.

The arbitration agreement provided that an award should be made on or before November 1, 1922. This date was extended to December 1 by written agreement. The first hearing before the arbitrators was held on November 2 and hearings continued thereafter from time to time to December 4, 1922. A large number of witnesses were examined, approximately four hundred pages of testimony were taken and a large number of exhibits were submitted. At the request of the arbitrators the time within which the award might be made was first extended to December 15 and was later extended to December 22, 1922. Briefs were submitted to the arbitrators on December 16 and several sessions were held by them to discuss their decision. On the afternoon of December 21, the day before the date on which the award was required pursuant to the last extension, the arbitrators held a meeting and requested that the parties agree to a further extension of the time within which an

award might be rendered. This was agreed to by the five companies but was refused by New Jersey Insurance Company. Mr. Osborn, one of the three arbitrators, then stated at this meeting on December 21, in the presence of the other two arbitrators and of counsel for both parties, that he felt he could not do justice to the case in the short time remaining, namely, prior to midnight of the following day, and that unless a further extension were granted he would resign. Meanwhile, Mr. Osborn had been in touch with respondents' attorneys and was obtaining cases from them to sustain their side of the controversy. A further meeting was held on the morning of December 22, at which Mr. Cox and Mr. Ullman, two of the arbitrators, were present. At this meeting was presented and read a letter from Mr. Osborn in which he said: " I must and do therefore resign." Mr. Osborn was not present at this meeting and took no part in any of the proceedings after the meeting of December 21. After discussion Mr. Cox stated that he and Mr. Ullman would spend the rest of the day in going over the evidence, exhibits and briefs and that if he and Mr. Ullman, the other arbitrator, could concur in a decision they would render an award. An award was made and signed by them.

The first paragraph of the arbitration agreement provided as follows:

" *First.* The parties hereto name and appoint Frank H. Osborn and Albert Ullman as two of the three arbitrators herein provided for. In the event that Frank H. Osborn shall refuse to act as such arbitrator, or having accepted the appointment hereunder *shall later cease to act as such arbitrator through death, resignation or otherwise, the parties of the first part shall elect an arbitrator from among the individuals* named in the list of ' Proposed Arbitrators,' annexed hereto," and so as to each of the other arbitrators.

"*Fourth.* It is understood and agreed that the arbitrators, or a majority of them, are to determine whether or not the said policies are unenforcible by reason of any misrepresentation or concealment of material facts by the agent or agents of the parties of the first part or any of them.

"In the event that the arbitrators, or a majority of them, shall find and determine that the said policies are so unenforcible they shall find in their awards that nothing is due from any of the parties hereto to any of the other parties hereto, arising out of the issuance of said policies.

"*Fifth.* * * * The awards shall be in writing, shall be subscribed by all of the arbitrators *unless only two of the arbitrators shall agree upon said award,* in which case it shall be signed by the two arbitrators so agreeing. * * * *An award by a majority of the arbitrators shall be valid and binding.*"

On December 20, 1923, New Jersey Insurance Company brought on for hearing before Special Term a motion to confirm the purported award made by the two arbitrators following the resignation of Mr. Osborn. The Special Term denied the motion, holding that under the express provisions of the first clause of the arbitration agreement, the two remaining arbitrators were without power to make the award, in view of the fact that Mr. Osborn, the third arbitrator, had resigned or ceased to act and held that the purported award was a nullity and vacated it. On appeal the Appellate Division unanimously affirmed without opinion the order of Special Term. The matter is now before this court as the result of leave to appeal granted by this court.

*Frederic R. Coudert, Charles A. Conlon* and *Mahlon B. Doing* for appellant. By statute in New York the resignation of an arbitrator for any reason after the hearing cannot affect the power of the remaining arbitrators to render a valid award under a submission providing for an award

by a majority. This is also the law throughout the United States. (*Crofoot* v. *Allen*, 2 Wend. 494; *Bulson* v. *Lohnes*, 29 N. Y. 291; *McInroy* v. *Benedict*, 11 Johns. 402; *Ex parte Rogers*, 7 Cow. 526; *Schultz* v. *Halsey*, 3 Sandf. 405, 408; *Horton* v. *Garrison*, 23 Barb. 176; *Kingston* v. *Kincaid*, 14 Fed. Cas. No. 7821, pp. 590, 592; *Ackley* v. *Finch*, 7 Cow. 290; *Carpenter* v. *Wood*, 42 Mass. 409; *Metz* v. *Tregallis*, 82 Md. 351; *Doyle* v. *Patterson*, 84 Va. 800; *Greenville* v. *Spartanburg*, 62 S. C. 105.) The terms of the arbitration submission in this case did not and were not intended to change the general rule of existing law as to majority awards. (*Dobbins* v. *Cragin*, 50 N. J. Eq. 640; *Straus* v. *Borg*, 172 Ill. App. 466; *Day* v. *Hammond*, 57 N. Y. 479; *Matter of Grening*, 74 Hun, 62; *Battey* v. *Button*, 13 Johns. 187; *Chutter* v. *Richardson*, 80 N. H. 116; *Locke* v. *Filley*, 14 Hun, 139.)

*D. Roger Englar, Lamar Hill* and *George S. Brengle* for respondents. Under the express provisions of the arbitration agreement between the parties, the purported award, rendered after the resignation of one of the three arbitrators, and before the Marine Office Companies had an opportunity of appointing a substitute, as they were required to do under the submission, is wholly void and the decision of the lower courts, refusing to confirm and vacating the purported award, is correct. (*District of Columbia* v. *Bailey*, 171 U. S. 161; *Brady* v. *Brooklyn*, 1 Barb. 584, 590; *Whitcher* v. *Whitcher*, 49 N. H. 176; *Walnut* v. *Rankin*, 70 Iowa, 65; Morse on Arbitration & Award, 3, 50; Russel on Arbitration, 36; *Matter of S. P. Co.*, 155 Fed. Rep. 1001; *U. K. M. S. Assur. Assn.* v. *Houston & Co.*, 1896, 1 Q. B. 567; *Matter of Picker*, 130 App. Div. 88; *Matter of Conway*, 179 App. Div. 108.) Quite apart from the specific provisions of paragraph " first " of the arbitration agreement, it is entirely clear that when one of the arbitrators resigned or ceased to act as arbitrator, the remaining arbitrators were powerless

to proceed further and the purported award rendered by the remaining arbitrators is wholly null and void. (Morse on Arbitration & Award, 151, 153; *Lyon* v. *Blossom,* 11 N. Y. Super. Ct. 318; *Fulden* v. *Lohens,* 14 Abb. Pr. 48; *Matter of Grening,* 74 Hun, 62; *Barr* v. *Chandler,* 47 N. J. Eq. 532; *Heritage* v. *State,* 43 Ind. App. 595; *Moore* v. *Ewing,* Coxe [N. J.], 144; *Kent* v. *French,* 76 Iowa, 187; *Bierne* v. *N. T. Gas Co.,* 221 S. W. Rep. 301; *Matter of Beck* v. *Jackson,* 1 C. B. [N. S.] 695.)

*Julius Henry Cohen* and *Kenneth Dayton* for Chamber of Commerce of State of New York, *amicus curiœ.*

Pound, J. The question is whether, after the final submission of an arbitration, one of three arbitrators may by his resignation prevent the other two arbitrators from making a valid award under a submission providing for an award by a majority and for the filling of vacancies in case an arbitrator resigns. It is contended on one hand that, while the final award may unquestionably be made by a majority of the arbitrators, nevertheless in case of a vacancy by resignation before the final award is made, the agreement requires literally the choice of a substitute arbitrator before an award can be made; it is contended on the other hand that the arbitration proceedings proper, which require all the arbitrators to act, end when the case is finally submitted to the arbitrators for their decision and that the withdrawal of an arbitrator thereafter is of no more importance than the equivalent of a dissent.

The Legislature by the enactment of the Arbitration Law of 1920, and this court by upholding broadly the constitutionality of the statute (*Matter of Berkovitz* v. *Arbib & Houlberg, Inc.,* 230 N. Y. 261), have given a new importance ·to arbitration tribunals set up by the parties as a substitute for the courts in the settlement of controversies. To approach the consideration of the question we may, therefore, properly bear in mind the

development of the common law of arbitration through the statutes to its present stage.

But first, the practice of arbitrators of conducting themselves as champions of their nominators is to be condemned as contrary to the purpose of arbitrations and as calculated to bring the system of enforced arbitrations into disrepute. An arbitrator acts in a quasi-judicial capacity and should possess the judicial qualifications of fairness to both parties so that he may render a faithful, honest and disinterested opinion. He is not an advocate whose function is to convince the umpire or third arbitrator. He should keep his own counsel and not run to his nominator for advice when he sees that he may be in the minority. When once he enters into an arbitration he ceases to act as the agent of the party who appoints him. He must lay aside all bias and approach the case with a mind open to conviction and without regard to his previously formed opinions as to the merits of the party or the cause. He should sedulously refrain from any conduct which might justify even the inference that either party is the special recipient of his solicitude or favor. The oath of the arbitrators is the rule and guide of their conduct. Civil Practice Act, section 1452, prescribes the form of oath as follows: " Before hearing any testimony, arbitrators selected either as prescribed in this article or otherwise must be sworn, by an officer authorized by law to administer an oath, *faithfully and fairly to hear and examine the matters in controversy and to make a just award according to the best of their understanding.* * * * " The oath may be waived, but the obligation remains. Although a known interest does not disqualify and the parties may not complain merely because the arbitrators named were known to be chosen with a view to a particular relationship to their nominator or to the subject-matter of the controversy, they are entitled to expect that arbitrators thus chosen will proceed with indifference and impartiality.

Viewed with this background, the law forbids the arbitrator, even though he acts with good intentions, so to ·conduct himself as to defeat the purpose of the arbitration by acting either for his own convenience or in the supposed interests of the party by whom he is named, except as he has, under Civil Practice Act, section 1453, the naked power to withdraw before all the proofs and allegations are heard. (*Matter of Bullard* v. *Grace Co.*, 240 N. Y. 388, decided herewith.) He accepts responsibilities to which convenience and favor must defer. We may assume that Mr. Osborn's conduct was inspired by the best of reasons and with no intention to frustrate the arbitration for ulterior ends. Another might follow the same course of conduct that he followed with an eye single to his own convenience or the interest of his nominator to avoid an adverse decision. Such an untoward result should be avoided unless the law applicable to arbitrations permits the arbitration to be brought to so impotent a conclusion.

The provisions of the Civil Practice Act so far as practicable and consistent apply to arbitration agreements. Material provisions are as follows:

" § 1451. Hearings by arbitrators. Subject to the terms of the submission, if any are specified therein, the arbitrators selected as prescribed in this article must appoint a time and place for the hearing of the matters submitted to them, and must cause notice thereof to be given to each of the parties. They, or a majority of them, may adjourn the hearing from time to time upon the application of either party for good cause shown or upon their own motion, *but not beyond the day fixed in the submission for rendering their award, unless the time so fixed is extended by the written consent of the parties to the submission or their attorneys.*"

" § 1453. Power of arbitrators. The arbitrators selected either as prescribed in this article or otherwise, or a majority of them, may require any person to attend

before them as a witness; and they have, and each of them has, the same powers with respect to all the proceedings before them which are conferred upon a board or a member of a board authorized by law to hear testimony. *All the arbitrators selected as prescribed in this article must meet together and hear all the allegations and proofs of the parties; but an award by a majority of them is valid unless the concurrence of all is expressly required in the submission.*"

The scheme of the law thus divides the arbitration proceedings into two parts: (a) the hearing, and (b) the decision and award. All the arbitrators must hear the allegations and proofs of the parties but an award by a majority of them is valid unless the submission otherwise provides. Even when prior to the enactment of the Arbitration Law of 1920 agreements to arbitrate and submissions were arbitrarily revocable up to a certain stage in the proceedings, the Code of Civil Procedure, section 2383, drew the line thus indicated between the hearing and the award. It read: " A submission to arbitration * * * cannot be revoked by either party, after the allegations and proofs of the parties have been closed, and the matter finally submitted to the arbitrators for their decision." Now that agreements to arbitrate are no longer revocable at the will of a party but may be enforced by a party who is aggrieved by a refusal to proceed to arbitration, this limitation no longer has a place in the law and has been repealed, but it is significant that even under the earlier practice a party who stayed in until the final submission to the arbitrators for their decision could no longer trim his sails to shift his course when the wind of defeat began to rise.

At common law more latitude was allowed as to the hearing. Where the submission was to three with power to two to make the award, two had power to hear where the third was notified and refused to attend or was willfully absent (*Crofoot* v. *Allen*, 2 Wend. 494), but by the Revised Statutes (now Civil Practice Act) all the

arbitrators were required to hear all the proofs and allegations of the parties, otherwise the award was a nullity. (*Bulson* v. *Lohnes,* 29 N. Y. 291.) No further change was made in the common law. It is not said that all the arbitrators must participate in making the award. That is an exception to the general rule which may be expressly stipulated for by the parties. All the arbitrators should be notified to meet for deliberation so that opportunity for full consultation is furnished but it is not the rule that one may then by wilful absence,— and resignation at this stage is no less than wilful absence,— prevent an award by a majority. All should meet and hear the proofs but the report of two is valid unless the third has been excluded from participation in their deliberations without fault on his part. The refusal of the third arbitrator to attend after final submission ceases to be material when its effect would be to juggle one of the parties out of the benefit of the arbitration. (*Carpenter* v. *Wood,* 42 Mass. 409.) If an arbitrator may resign at the last moment, if concert of action in reaching a decision as distinguished from the award itself is necessary, no award could be reached in any case if at the eleventh hour one of the three found himself in the minority and sought to serve his own interests or those of the party naming him by resigning. The law does not contemplate that the edifice thus elaborately raised should be toppled over by such an untimely explosion from within. The salutary purpose of an arbitration is the summary and extra-judicial settlement of controversies between parties. The court should pause before permitting a technical and strained construction of the law or the agreement of the parties to defeat that purpose. If the law or the parties contemplate the possibility of an endless chain of frustrated arbitrations or the summary termination of the submission when the pen is in the hand of two of the arbitrators to sign an award, the meaning should be unmistakably expressed. It is highly improbable that

'any arbitration agreement or submission to arbitration would be made if it would involve the parties in such absurd consequences. Laws should be construed sensibly and plain purposes should not be defeated by narrow interpretations.

It follows that the withdrawal of one of the arbitrators on the threshold of a formal award does not end the authority of the other two unless the terms of the arbitration submission take the case out of the general rule governing majority awards. The arbitration agreement and the Civil Practice Act should be read in harmony where harmony is possible. Literally, the agreement provides that if an arbitrator ceases to act a substitute arbitrator shall be chosen. But the substitute clause need not be read so crabbedly as to permit an unreasonable result in flat contradiction of the common and statute law. The letter should be enlarged within legitimate bounds, rather than limited, when the end in view may thereby be more effectually accomplished.

Under a fair and equitable interpretation of the submission agreement, a vacancy caused by the withdrawal of an arbitrator need not be filled after the case has been heard, considered and practically decided. The withdrawal at that point does not prejudice the rights of the parties to a hearing before a full board and an award by a majority or make necessary a rehearing of all the allegations and proofs of the parties before a substitute arbitrator.

The orders should be reversed, with costs in all courts, and application to confirm award granted, with ten dollars costs.

CRANE, J. (dissenting). The Arbitration Law is based on contract. There can be no arbitration enforced upon the parties by the courts in the absence of contract. The contract of arbitration is to be construed like any other contract and all its terms and conditions given

force and effect unless they are against public policy or illegal. (*Matter of Zimmerman* v. *Cohen*, 236 N. Y. 15.)

Article 2, sections 3 and 4 of the Arbitration Law are based upon a previous existing contract. If the contract provides how an arbitrator shall be appointed in case of failure or neglect of one to act, this method must be pursued. The court acts only on failure of the parties to live up to the contract. There is nothing in the law that prevents the parties from contracting for the appointment of three arbitrators, and that if one should resign after the hearings were closed, and before decision, another should be appointed in his place. In fact, this is what happens in case of death. Should one of three arbitrators die at the end of the hearings and before decision, another arbitrator, in my opinion, would have to be appointed to take his place. An award by the two living arbitrators would be void.

The result is the same when one of the arbitrators ceases to exist as such by resignation. He is actually dead to the proceeding. The case would be different if his resignation was brought about by the action of the party appointing him, or was done in bad faith. We must assume in this case, after the unanimous affirmance, that Osborn's resignation was in the utmost good faith; and it is conceded that the respondents are not the cause, but the sufferers. They contracted for just such an emergency in the very first paragraph of the arbitration agreement. " * * * In the event that Frank H. Osborn shall refuse to act as such arbitrator or, having accepted the appointment hereunder, shall later cease to act as such arbitrator through death, resignation or otherwise, the parties of the first part shall (1) elect an arbitrator from among the individuals named in the list of ' Proposed Arbitrators,' annexed hereto."

The opinion of this court in my judgment amends and modifies this contract. The resignation of Osborn, it says, must take place before the hearings have ended and

not after.   There is no such limitation in the contract.
The parties have agreed otherwise, and as I have before
stated, I do not think the law prevents them from making
such an agreement.   Such a limitation does not apply, I
take it, in case of Osborn's death after a hearing and
before decision.   Why should there be this limitation
in the one instance and not in the other?   Of course we
must assume that there was the utmost good faith in
the resignation.   Bad faith changes all things.   The cases
where an arbitrator deliberately resigns in order to prevent
an adverse decision can be dealt with when they arrive.
This is not such a case.

The contract having provided for an arbitration, the
decision was as important as the hearings.   The respond-
ents were entitled to an arbitrator appointed by them
to discuss the case and present his views, whatever they
were, and both parties were entitled to there arbitrators
able to act and functioning as such at the time of the
decision, although the majority vote of the three could
make the decision.   (Civ. Prac. Act, sect. 1453.)

Such is the contract as I read it, which the parties
have made.   For these reasons I dissent.

HISCOCK, Ch. J., CARDOZO, MCLAUGHLIN, ANDREWS
and LEHMAN, JJ., concur with POUND, J.; CRANE, J.,
reads dissenting opinion.

Orders reversed, etc.