In the Matter of the Arbitration between the ASTORIA MEDICAL GROUP et al., Respondents, and HEALTH INSURANCE PLAN OF GREATER NEW YORK, Appellant.

First Department, June 20, 1961.

*John W. Nields* of counsel (*Mathias F. Correa, Marshall H. Cox, Jr.,* and *Francis J. Bloustein* with him on the brief; *Cahill, Gordon, Reindel & Ohl,* attorneys), for appellant.

*Cornelius McDougald* for respondents.

*Per Curiam.* The respondent, Health Insurance Plan of Greater New York (hereinafter referred to as HIP), and its various physician-composed medical groups, being unable to agree on certain fee arrangements proceeded, in accordance with the terms of their contract, to institute a tripartite arbitration. As its arbitrator HIP nominated a physician who was a member of its board of directors as well as a consultant paid by it. The medical groups objected to such appointment and moved at Special Term to have such appointee disqualified. Special Term granted the motion and directed the designation of a new arbitrator. We conclude that such order was properly made and should be affirmed.

The threshold inquiry to be answered is whether the relief here sought may properly be granted in advance of an award. The absence of statutory authority is not an absolute bar to preaward judicial intervention for the purpose of disqualifying an arbitrator. Such intervention has been sanctioned in *Western Union Tel. Co.* v. *Selly* (295 N. Y. 395) and in *Matter of Pisciotta (Newspaper Enterprises)* (5 A D 2d 1014). While the *Western Union* case was one where a court-appointed arbitrator was disqualified, yet in the *Pisciotta* case the arbitrators disqualified were those appointed by the parties. While the facts of these cases are not identical with those here involved they bespeak the inherent power of the court to intervene despite the absence

of statutory authority therefor. In any event, apart from these cases, it is inconceivable that a court of equity must sit idly by and permit an arbitration proceeding to continue where, by reason of the surrounding circumstances, any award made in favor of one party is preordained to be vacated. The courts are not that impotent.

The ultimate question to be answered is whether the facts and circumstances here present are such as to require the exercise of such power. We conclude that they are. Despite the more " liberal " standards applicable to a tripartite arbitration an arbitrator is still required to " possess the judicial qualifications of fairness to both parties so that he may render a faithful, honest and *disinterested* opinion " (*Matter of American Eagle Fire Ins. Co. v. New Jersey Ins. Co.*, 240 N. Y. 398, 405 [emphasis supplied]). Thus it has been held that parties may not designate themselves to serve as arbitrators and that, such designation being made, the courts may preliminarily intervene to disqualify such designees. (*Matter of Pisciotta* [*Newspaper Enterprises*], *supra*.)

Disregarding the legal subtleties of the corporate entity but looking rather to the practical side of the corporate existence it is the board of directors that is really the corporation insofar as policy decisions and operations are concerned. (*See Matter of Cross & Brown Co.* [*Nelson*], 4 A D 2d 501.) As a practical matter, decisions of the corporation are those made by its board. Thus, in this case the initial refusal of HIP to accede to the fee requests of the medical groups was a determination made by the HIP board of directors, of which the named arbitrator is a member. He is, therefore, essentially a " party " to the dispute because he is now asked to sit as an arbitrator to determine the propriety or fairness of a decision in the making of which he participated. HIP, through its designation of its director, has in effect designated itself as one of the arbitrators. We conclude that such director may not sit as an arbitrator and, in the contemplation of the law, he cannot render the requisite " disinterested " opinion and that any eventual award in favor of HIP would have to be vacated. Thus, a situation is presented requiring that the court now intervene and disqualify.

Accordingly, the order granting petitioners' motion to disqualify the person designated by HIP to serve as an arbitrator should be affirmed, with costs.

BREITEL, J. (dissenting). I am constrained to dissent and vote to reverse and deny the motion to disqualify the arbitrator designated by the Health Insurance Plan.

The respondent medical groups, comprised of private physi-. cians, contracted with appellant to provide medical care to persons insured by the plan in return for a fixed sum, or "capitation". The contracts provided for payment of an additional sum depending, in amount, upon criteria to be agreed upon subsequently. Provision was made for arbitration in the event the parties could not agree upon these criteria. They, in fact, failed to agree. The medical groups demanded arbitration, and appellant thereupon exercised its right under the contracts to select one of three arbitrators.

Special Term, in advance of any further proceedings, granted a motion by the medical groups to disqualify the person designated because he is a director and compensated consultant for the party which designated him.

The agreement for arbitration provides as follows: "One arbitrator shall be appointed by HIP and another by the GROUP, who jointly shall appoint a third arbitrator. If either HIP or the Medical Group fails to appoint an arbitrator within two (2) weeks of the time requested to appoint such arbitrator, either Party shall request the American Arbitration Association to appoint such arbitrator. If a third arbitrator cannot be agreed upon within two (2) weeks, either Party shall request the American Arbitration Association to appoint a third arbitrator. The decision of two of the three arbitrators shall be final and binding upon both Parties."

In short, the case involves a typical tripartite arbitration in which each party chooses his "own" arbitrator and the two choose a "neutral" third arbitrator.

It has been definitively decided in this court that the remedy for "evident partiality" or other misconduct of arbitrators is one that can be reviewed only in connection with a motion to vacate or confirm the award (*Matter of Franks* [*Penn-Uranium Corp*], 4 A D 2d 39, 40; *Matter of Brookfield Clothes* [*Rosewood Fabrics*], 4 A D 2d 458, 461, affd. 3 N Y 2d 1021; *Matter of Cross & Brown Co.* [*Nelson*], 4 A D 2d 501; *Matter of Ballantine Books* [*Capital Distr. Co.*], 11 A D 2d 933). The rule is evidently the same under the Federal arbitration statute (*Matter of Dover S. S. Co.*, 143 F. Supp. 738, 742 [U. S. Dist. Ct., S. D. N. Y., HERLANDS, J.]). The text writers would also seem to be in accord (6 Williston, Contracts [Rev. ed.], § 1923A; Kellor, American Arbitration, 236–237). Cases involving a court-appointed arbitrator, an illusory agreement for the designation of arbitrators, or the failure to designate competent persons to serve as arbitrators are all beside the point (e.g., *Western Union Tel. Co.* v. *Selly*, 295 N. Y. 395; *Matter of Cross & Brown Co.*

[*Nelson*], 4 A D 2d 501, *supra; Matter of Pisciotta* [*Newspaper Enterprises*], 5 A D 2d 1014). Consequently, there was no authority under the statutes to entertain the present motion (Civ. Prac. Act, § 1448 *et seq.*).

Passing to the merits, if it were necessary, a vital distinction must be made between partiality in actual conduct, referred to in the statute as " evident partiality ", which is a species of misconduct and the bias or partiality that one may infer from financial or personal interest in the subject matter. It is only the first which the statute supplies as a ground for vacatur of an arbitration award, and that is, undoubtedly, the reason for the adjective " evident " before the word " partiality " in the statute (Civ. Prac. Act, § 1462, subd. 2; *Matter of Linwood* [*Sherry*], 14 Misc 2d 495, affd. 7 A D 2d 757; *Matter of Amtorg Trading Corp.* [*Camden Fibre Mills*], 277 App. Div. 531, affd. 304 N. Y. 519; *Matter of Jackson & Co.* [*Compania Gasoliba S. A.*], 282 App. Div. 125; cf. *Matter of A. M. Perlman, Inc.* [*Raycrest Mills*], 280 App. Div. 744, especially 748–749, affd. 305 N. Y. 803). In a leading case the Court of Appeals in this State has made it quite clear that an arbitrator, no matter how interested in the subject matter, or how chosen, may not act except with quasi-judicial correctness. On the other hand, in that very same case, after expressing one of the most often-quoted strictures on the proper conduct of even " partisan " arbitrators, it was made explicit that " Although a known interest does not disqualify and the parties may not complain merely because the arbitrators named were known to be chosen with a view to a particular relationship to their nominator or to the subject-matter of the controversy, they are entitled to expect that arbitrators thus chosen will proceed with indifference and impartiality." (*Matter of American Eagle Fire Ins. Co.* v. *New Jersey Ins. Co.*, 240 N. Y. 398, 405.)

In the *Dover S. S. Co.*, case, cited above, Judge HERLANDS held precisely the same, pointing out:

" Moreover, the designation by the parties themselves of arbitrators who may not be completely disinterested, accords with the generally accepted practice in arbitration proceedings of this type. In such case, it is quite frankly recognized that the ' neutral ' arbitrator is the one selected by the parties' arbitrators.

" If the parties had intended to assure the impartiality of all three arbitrators, they could have readily provided, for example, that disputes should be arbitrated before a board or committee of a named trade association, e.g., Marine Transit Corp. v. Dreyfus, 1932, 284 U. S. 263, 52 S. Ct. 166, 76 L. Ed. 282, affirm-

ing The Gerald A. Fagan, 2 Cir., 1931, 49 F. 2d 215, or before an arbitrator or arbitrators selected from a panel of the American Arbitration Association.

" The cases cited by petitioner are readily distinguishable. They involve situations where there was only one arbitrator, or where the arbitrator was required by the terms of the arbitration agreement to be neutral, or where the arbitrator was court-appointed." (*Matter of Dover S. S. Co.*, 143 F. Supp. 738, 741–742, *supra.*)

In viewing the qualifications of arbitrators it is essential to distinguish another kind of misconduct, subsumable under section 1462 of the Civil Practice Act, which involves *concealment* of interest or relationship in the selection of neutrally chosen arbitrators,* a matter quite different from disqualification resulting from the mere fact of interest or relationship (*Matter of Milliken Woolens [Weber Knit Sportswear]*, 11 A D 2d 166, affd. 9 N Y 2d 878; *Matter of Friedman*, 215 App. Div. 130; *Matter of Avalon Fabrics [Raymill Fabric Corp.]*, 195 Misc. 267, affd. 275 App. Div. 1032; *Matter of Knickerbocker Textile Corp.* v. *Sheila-Lynn, Inc.*, 172 Misc. 1015, 1019; 6 C. J. S., Arbitration and Award, § 46). It is notable, however, even in this situation, that the remedy is by vacatur of the award and not by preliminary disqualification for which there is no authority in the statute (Civ. Prac. Act, § 1450; *Matter of Franks [Penn Uranium Corp.]*, 4 A D 2d 39, *supra*).

No one would dispute that persons are free to designate by name arbitrators who are related by blood, marriage, personal interest (financial or otherwise, in the subject matter) or affected by any other circumstance which ordinarily would disqualify one to serve as a judge or juror. (*Matter of American Eagle Fire Ins. Co.* v. *New Jersey Ins. Co.*, 240 N. Y. 398, *supra*; *Matter of Amtorg Trading Corp. [Camden Fibre Mills]*, 277 App. Div. 531, *supra*; *Matter of Linwood [Sherry]*, 14 Misc 2d 495, affd. 7 A D 2d 757, *supra*.) The reason is, of course, that there the parties have knowingly chosen their arbitrators and they are not narrowly restricted in that choice. But even with respect to such arbitrators, if they misconduct themselves, the award may be vacated (cf. *Matter of American Eagle Fire Ins. Co.* v. *New Jersey Ins. Co.*, *supra*, p. 405).

Nor does it matter that in the typical tripartite selection the names may not be designated in advance. It is common knowledge, for so long that it is impossible to determine its beginning, that where each of two contending parties are free to designate

---

* E.g., from panels presented to the parties by the American Arbitration Association.

their own arbitrator without veto by the other that each is expected to choose persons associated with his interest. (See the discussion above quoted in *Matter of Dover S. S. Co.*, 143 F. Supp. 738, 741; Note: The Use of Tripartite Boards in Labor, Commercial, and International Arbitration, 68 Harv. L. Rev. 293, 296 *et seq.*, 318, 339; Lesser, Tripartite Boards or Single Arbitrators in Voluntary Labor Arbitration, 5 Arbitration Journal [N. S.] 276; Phillips, A Lawyer's Approach to Commercial Arbitration, 44 Yale L. J. 31, 47–48; Note: The Dilemma of Tri-Partite Arbitration, 14 Arbitration Journal 161; Notes: Tri-Partite Arbitration, 15 Arbitration Journal 49; Pirsig, The New Uniform Arbitration Act, 11 Business Lawyer, April 1956, 44.)

Of course, in myriad arbitrations for decades the tripartite form of arbitration, criticized though it has been by most experts in the field, has been a common form (see Kellor, *id.*). Moreover, in the recent proposed revision of the civil practice statutes recognition was realistically given to the tripartite form of arbitration (Final Report of the Advisory Committee on Practice and Procedure, 1961, § 7511, subd. (b) clause (ii); Second Preliminary Report of the Advisory Committee on Practice and Procedure 1958, pp. 145–146).

The fact is that the tripartite type arbitration has been, and still is often used. It has been said: "In the past the method commonly used for their selection was for each party to appoint one arbitrator, these two to appoint a third. Despite positive language by appellate courts about the necessity of impartial arbitrators, they must have known, as former practising attorneys, that the method of selection made this an impossible ideal." (Phillips, *op. cit.* 47.)

Indeed, in an exhaustive survey it was estimated that 50% of grievance arbitrations under collective bargaining agreements are held before tripartite boards and that 10% of commercial arbitrations, today, are conducted before tripartite boards (68 Harv. L. Rev. 293, 315, *supra*).* In another survey it was estimated that 56% of the labor arbitrations were before tripartite boards. This was based on a study of 1,237 collective bargaining contracts (Lesser, *op. cit.*, 276).

---

* In the Harvard study of labor arbitrations it was said: "Party-appointed arbitrators are almost always partisan. They are often members of the organization that are parties to the dispute and may have participated in the case at lower levels of the grievance procedure" (296). For the practices in commercial arbitration, see pages 318–319 of the Harvard study; and the wry note, "Employees of the parties, whose positions would be forfeited if they departed from the instructions of their employers, do not ordinarily sit on commercial tribunals" (319).

For whatever its relevance, it should be observed that this case involves neither a commercial nor a labor arbitration, but an internal organizational arbitration. It is perhaps more like a labor arbitration than any other.

Concededly, the majority view in the field of arbitration is that the best arbitration is before persons who are altogether impartial, whether one or three or more. But, among the materials cited immediately above there may be found arguments in favor of the tripartite boards. The fact is the tripartite boards are used to a significant degree.

With this being the fact of life, and these being the legal precedents, there is no warrant then for a radical departure.

Accordingly, the order granting the motion to disqualify the designated arbitrator should be reversed and the motion denied.

BOTEIN, P. J., RABIN, VALENTE and STEUER, JJ., concur in Per Curiam opinion; BREITEL, J., dissents and votes to reverse in opinion.

Order entered on April 17, 1961, granting petitioners' motion to disqualify the person nominated by respondent as an arbitrator, affirmed, with $20 costs and disbursements to the respondents.