**BALLANTINE BOOKS, INC., Petitioner-Appellee,**

v.

**CAPITAL DISTRIBUTING COMPANY, Respondent-Appellant.**

No. 140, Docket 27154.

United States Court of Appeals
Second Circuit.

Argued Dec. 11, 1961.

Decided April 11, 1962.

Edward N. Costikyan, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, New York City, on the brief), for appellee.

Stanley M. Estrow, New York City, for appellant.

Before LUMBARD, Chief Judge, and MOORE and HAYS, Circuit Judges.

LUMBARD, Chief Judge.

Capital Distributing Company appeals from a judgment of the District Court for the Southern District of New York which confirmed the award of three arbitrators in favor of Ballantine Books, Inc. for $151,343.84. The proceeding to confirm was brought in the district court by Ballantine, a New York corporation with its principal place of business in New York City, against Capital, a Connecticut corporation with its business headquarters in Derby, Connecticut, pursuant to the United States Arbitration Act, 9 U.S.C. § 1 et seq.

Capital's appeal claims that the federal court was without jurisdiction as the New York courts had previously taken jurisdiction by reason of Capital's motion there to disqualify the chairman of the arbitration board. It also alleges that the district court should have vacated the award because of the evident partiality of the chairman, and because the award was incomplete and went beyond the powers of the arbitrators. We affirm the district court as it had jurisdiction to pass upon the award, and we find no merit in Capital's claims of improper conduct by the chairman and imperfections in the award itself.

In 1954 Ballantine, a publisher of paperbacks contracted with Capital to distribute its publications. Capital was to pay Ballantine 15% of the invoice value of Ballantine's shipments to Capital's wholesalers' inventory twenty days after the end of the month in which shipments were made, and an additional 40% thirty days later. Because the wholesalers had the right to return books, the remainder (less a further 3% "settlement account") was not payable until six months after a specific title had been called in from the wholesalers. As Capital was paid by the wholesalers, it therefore acquired sums of money as reserves against returns from wholesalers for which it was required to account to Ballantine from time to time.

All went well until May and June 1958, when Capital refused to pay Ballantine approximately $175,000 claimed to be due, stating that this was in accordance with its right to maintain additional reserves against future returns. In June, 1958, Ballantine served a demand for arbitration pursuant to the terms of the contract. Arbitration hearings finally commenced on April 29, 1959, and continued with adjournments and frequent delays until January 11, 1961; on May 29, 1961 the award in favor of Ballantine was filed.

On the ninth day of the hearing, October 8, 1959, Chester B. McLaughlin, Jr., the chairman of the arbitration panel, asked the attorneys for the parties, off the record, whether there was any possibility of settlement. After being advised that there had been unfruitful talks, the chairman said that on the basis of the record as it then stood it was his tentative view that there should be an award for Ballantine. This session continued, and what was expected to be the final session was arranged for November 5.

On November 4, Capital moved before the arbitrators for disqualification of the chairman, on account of his off-the-record comments on October 8. The arbitrators denied the motion on November 5, and a special Committee on Challenge of the American Arbitration Association also passed on the matter with the same result on December 17, 1959. The Association scheduled the resumption of the arbitration for January 11, 1960.

On January 8, 1960, Capital moved in the New York Supreme Court to disqualify the chairman. Mr. Justice Steuer denied the motion on January 13, 1960, having first refused to stay the arbitration. The judge held that the chairman's conduct did not transcend any rule of the Association. He said that, while it would have been better if the chairman had not suggested a settlement and had not indicated his views, his actions did not indicate such prejudice as to require disqualification. An appeal to the Appellate Division, First Department, resulted in an

affirmance on September 27, 1960, on the ground that the application was premature. 11 A.D.2d 933, 207 N.Y.S.2d 425.

Meanwhile the final arbitration hearing had been held on January 11, briefs filed and an award made on May 29. On June 13, the day after the last arbitrator had filed acknowledgment of the award, Ballantine filed its application to confirm in the federal court.

1. Capital argues first that the district court erred in denying its motion for an order "remanding all pending proceedings to confirm * * * to the Supreme Court, New York County, on the grounds that said Court has assumed jurisdiction of such arbitration proceeding * * *". The New York court is alleged to have taken jurisdiction over the entire arbitration proceeding upon the filing of Capital's motion to disqualify the chairman, and it is argued that this jursidiction precluded the federal court from entertaining any motion pertaining to the arbitration.

■ There is no question that the district court would have had jurisdiction under the United States Arbitration Act, 9 U.S.C. §§ 1–14, to entertain Ballantine's motion to confirm in the absence of the prior state court proceedings. The arbitration clause was unquestionably part of a "contract evidencing a transaction involving commerce" 9 U.S.C. § 2, and the diversity of citizenship of the parties gave the independent federal jurisdiction which we have held is required under the Act, Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2 Cir., 1959), cert. granted, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, dismissed per stipulation, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

■ Since this is an independent federal court proceeding, not the product of a petition for removal, the "remand" sought by Capital would be an inappropriate remedy. We shall, however, treat the motion as one to dismiss the federal proceeding or stay it pending further state proceedings. The form of the remedy sought is irrelevant since we hold that Capital is not entitled to any relief.

Capital attempts to analogize this case to those cases holding or implying that the twenty-day period for the removal of the supervision of an arbitration proceeding from the state to the federal courts begins to run from the date of the first court action relating to the arbitration. Marchant v. Mead-Morrison Mfg. Co., 29 F.2d 40 (2 Cir., 1928), cert. denied, 278 U.S. 655, 49 S.Ct. 179, 73 L.Ed. 565 (1929); Minkoff v. Scranton Frocks, Inc., 172 F.Supp. 870 (S.D.N.Y.1959). Without expressing any opinion on the merits of that doctrine, we find no difficulty in distinguishing that question of interpretation of the relevant removal statute, now 28 U.S.C. § 1446, from the question now before us, which is one of the power of a federal court to entertain an independent action dealing with the same subject matter as an action already pending before a state court.

■ The well established rule is that a federal court is not required to abate the normal *in personam* action on a plea of a pending action in a state court. Stanton v. Embrey, 3 Otto 548, 93 U.S. 548, 23 L.Ed. 983 (1877); cf. Kline v. Burke, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922); Mandeville v. Canterbury, 318 U.S. 47, 63 S.Ct. 472, 87 L.Ed. 605 (1943); see generally 1 Moore, Federal Practice ¶¶ 0.221, 0.222 (2d ed. 1960). Had this case been initiated as a civil action rather than by arbitration, it would have been a simple contract action, with none of the *in rem* characteristics which required the application of a different rule in such cases as Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 59 S.Ct. 270, 83 L.Ed. 285 (1939) and Palmer v. Texas, 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435 (1909). In such cases it is within the discretionary power of the district court to stay its proceedings pending the completion of state proceedings. Ferguson v. Tabah, 288 F.2d 665, 672 (2 Cir., 1961); cf. Penn General Cas. Co. v. Pennsylvania, 294 U.S. 189, 197, 55 S.Ct. 386, 79 L.Ed. 850 (1935) (dictum).

■ Thus even if we were to accept Capital's contention that the beginning of the arbitration began a continuing special proceeding in the New York Supreme Court (or alternatively if we were to believe that the motion there to disqualify the chairman began such a proceeding), we would not hold that Capital had a right to have the district court dismiss or stay the petition to confirm. In Cocotos Steamship of Panama, S.A. v. Hugo Neu Corp., 178 F.Supp. 491 (S.D.N.Y.1959), the district court did no more than exercise its discretion in favor of a stay. Whether or not there might be situations where a state court has proceeded so far in the supervision of an arbitration that it would be an abuse of discretion for the federal court to intrude itself, such a situation is not here presented. Such discretion must be exercised and judged in terms of the practicalities of the situation. We do not believe that the Appellate Division's determination that the motion to disqualify was premature and should not have been entertained was in any practical sense an assumption of supervision over the arbitration.[1]

■ Moreover, we hold that at the time of Ballantine's petition to confirm the state court did not have the arbitration proceedings *sub judice* and thus there was in actuality no conflict of jurisdiction. Whether or not such jurisdiction had attached is for this purpose a question of federal law. Cf. Minkoff v. Scranton Frocks, Inc., supra, 172 F.Supp. at 876; Robert Lawrence Co. v.

Devonshire Fabrics, Inc., supra; Lummus Co. v. Commonwealth Oil Ref. Co., 297 F.2d 80, 88 n. 7 (2 Cir., 1961). A party's unsuccessful attempt to have a state court entertain a motion to intervene in arbitration proceedings does not give the state court jurisdiction of the entire proceeding. No court has the proceedings *sub judice* at least until such time as it has actually passed upon the merits of some dispute relating to the arbitration.

2. We also find no merit in the claim that the district court should have set aside the award because of the alleged "partiality and misbehavior" of the chairman of the arbitration panel. Appellant's claims fall under two heads: First, it renews its attack, ultimately rejected by the state courts as premature, on Chairman McLaughlin's off-the-record discussion with counsel indicating his tentative views and encouraging settlement. Second, it claims that throughout the hearing Mr. McLaughlin continually favored Ballantine's position, discriminated against Capital's counsel, and in effect "usurped the office of counsel for Ballantine."

Capital's broadside attack upon Mr. McLaughlin in its brief is imprecise as to the standards of judicial review on these grounds, and includes claims of violation of various unofficial pronouncements by the American Arbitration Association. In actuality, our review is limited to a determination whether, in the language of the United States Arbitration Act,[2] there was "evident partiality

---

1. Whether or not the subsequent decision in Matter of Astoria Medical Group, 13 A.D.2d 288, 216 N.Y.S.2d 906 (1st Dept. 1961) overruled the decision of the same court in the present case is irrelevant for this purpose. We are concerned, in deciding this question of federal law, with the extent to which the state court has actually taken supervision of the proceedings, not with the extent to which it might have done so.

2. The United States Arbitration Act, 9 U.S.C. § 10 provides:
"In either of the following cases the United States court in and for the district wherein the award was made may

make an order vacating the award upon the application of any party to the arbitration—
"(a) Where the award was procured by corruption, fraud, or undue means.
"(b) Where there was evident partiality or corruption in the arbitrators, or either of them.
"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
"(d) Where the arbitrators exceeded

or corruption in the arbitrators," or "any other misbehavior by which the rights of any party have been prejudiced," or whether the Commercial Arbitration Rules of the American Arbitration Association, which the contract explicitly made applicable, were violated.

■ It is clear at the outset that there was no violation of the Rules in this respect. Sections 11 and 18 of the Rules, in which the only reference to bias is made, refer only to an arbitrator's financial interest in the outcome of a dispute or personal or business relationship with a party, and no claim has been made that any of these conditions existed in this case. Thus we are left to a judicial assessment of the fairness of the conduct of the proceedings, based upon our own reading of the transcript of the arbitration hearings. Such a reading does not convince us that the district judge was wrong in finding no "evident partiality."

■ Chairman McLaughlin's conduct of the hearing was wholly consistent with those standards of informality and expedition appropriate to arbitration proceedings. Indeed, we doubt that there would be any reason for questioning his actions had he been the judge at a trial in a district court. A judge is not wholly at the mercy of counsel, and would be remiss if he did not participate in questioning to speed proceedings and eliminate irrelevancies. E. g., Peckham v. Ronrico Corp., 288 F.2d 841 (1 Cir., 1961). *A fortiori* an arbitrator should act affirmatively to simplify and expedite the proceedings before him, since among the virtues of arbitration which presumably have moved the parties to agree upon it are speed and informality. American Almond Prods. Co. v. Consolidated Pecan Sales Co., 144 F.2d 448, 154 A.L.R. 1205 (2 Cir., 1944); Compania Panemena Maritima v. J. E. Hurley Lumber Co., 244 F.2d 286 (2 Cir., 1957); see generally

Mentschikoff, Commercial Arbitration, 61 Colum.L.Rev. 846 (1961).

■ We agree with Mr. Justice Steuer's oral opinion in the New York Supreme Court that Chairman McLaughlin's off-the-record discussion with the parties neither constituted prejudicial misbehavior nor demonstrated evident partiality.

It is to be expected that after a judge or an arbitrator has heard considerable testimony, he will have some view of the case. As long as that view is one which arises from the evidence and the conduct of the parties it cannot be fairly claimed that some expression of that view amounts to bias. By October 8, 1959, the arbitration had been under way for over five months, something over one thousand pages of testimony had been taken and many exhibits had been introduced and examined. On that same day, Capital's counsel told the arbitrators that it would take him no more than fifteen or twenty minutes of additional testimony to complete his defense. Under these circumstances, it is not to be wondered at that the chairman had reached a tentative conclusion.

While it is better in most cases for arbitrators to be chary in expressing any opinion before they reach their ultimate conclusion, and to avoid discussing settlement, it does not follow that such expressions are proof of bias. Mr. McLaughlin's remarks had no effect whatever on the hearings at the subsequent sessions. In summary, we can find no prejudice to Capital in his conversation with counsel.

■ 3. Capital's final contention is that the award should be set aside under 9 U.S.C. § 10(d) as not "mutual, final, and definite" because there were alleged minor disputes involving $4,-421.28 which were not specifically disposed of by the general award and because there was disagreement as to which of the two parties owed these amounts

---

their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

The language of New York Civil Practice Act § 1462, while not binding in this action, is substantially identical.

to third persons. This argument can readily be disposed of on the principle that it is not for a reviewing court to look behind a lump-sum arbitration award. Cf. James Richardson & Sons, Ltd. v. W. E. Hedger Transportation Corp., 98 F.2d 55 (2 Cir., 1938), cert. denied 305 U.S. 657, 59 S.Ct. 357, 83 L.Ed. 426 (1939). There is no reason not to think that the lump sum included provision for all the claims between the parties; it was obviously not the function of the arbitrators to determine whether the third-party claimants should go against Ballantine or Capital to collect these amounts.

Affirmed.