■ VANTAGE STEAMSHIP CORP., Appellant, v. COMMERCE TANKERS CORPORATION, Respondent.— Judgment, Supreme Court, New York County, entered on December 5, 1972, so far as appealed from, affirmed on the opinion of Gellinoff, J., at Special Term. Respondent shall recover of appellant $60 costs and disbursements of this appeal. Concur — Markewich, J. P., Murphy and Tilzer, JJ.; Nunez and Kupferman, JJ., dissent in the following memorandum by Kupferman, J.: I dissent and would reverse and vacate the arbitration award. It is unfortunate that after litigation for so long a period, and with such voluminous papers (the record on this appeal alone contains eight volumes), we should come out, in effect, telling the parties to start all over again, but the initial determinations in the Federal District Court lead to this inevitable conclusion. Judge Waterman has previously stated: " The facts involved in this most complicated combination of appeals have been amply and adequately developed in the decisions below." (*National Maritime Union of Amer.* v. *Commerce Tankers Corp.*, 457 F. 2d 1127, 1129.) However, for our purposes, a short summary is needed. Commerce sold its United States flag oil tanker " Barbara" to Vantage for $2,750,000. The contract contained an arbitration clause. Commerce had a collective bargaining agreement with the National Maritime Union (NMU), which contained a clause prohibiting a sale to a non-NMU carrier unless the purchaser assumed in writing the NMU arrangement. Vantage had a collective bargaining agreement with Seafarers International Union (SIU), which also covered newly acquired vessels. In the final version of the Vantage-Commerce purchase agreement, the clause for assumption of the new NMU union was deleted. NMU obtained an arbitration award against Commerce restraining the transfer without the NMU clause, which was initially sustained in the Federal court. (See 325 F. Supp. 360, 329 F. Supp. 151.) Commerce then commenced an arbitration against Vantage to enforce the contract of sale, and, in addition, to require compliance with the NMU clause even though not included in the Vantage-Commerce contract, but alleged to have been orally promised. The arbitration was directed to proceed. (N. Y. L. J., March 31, 1971, p. 2, col. 5.) Vantage served a cross demand for arbitration alleging breach of the contract by failure to deliver " Barbara" on the written terms of the agreement. The arbitrators 2–1 decided for Commerce. In connection with motions to confirm and objections to the award, a reference was directed, and the Referee found, among other things, ex parte contacts by the Commerce arbitrator with his principal during the arbitration. While the Referee was holding hearings, the Second Circuit Court of Appeals reversed the initial lower court determination, and then the National Labor Relations Board determined the NMU clause illegal.

The arbitrators, having been misdirected by the initial determination, later reversed (*National Mar. Union of Amer.* v. *Commerce Tankers Corp., supra*; *National Maritime Union* [*Vantage Steamship Corp.*], 196 N. L. R. B. No. 165) proceeded on the wrong theory. The attempt by the NMU to require the oil tanker to be subject to the union arrangement with the previous owners, akin to a servitude on a chattel (cf. *RCA Mfg. Co.* v. *Whiteman,* 114 F. 2d 86, cert. den. 311 U. S. 712), was an unfair labor practice, with anti-trust implications. In that type of situation, the arbitrators needed proper legal guidance. (Cf. *Matter of Aimcee Wholesale Corp.* [*Tomar Prods.*] 21 N Y 2d 621; *American Safety Equip. Corp.* v. *Maguire Co.,* 391 F. 2d 821.) Without it, their conclusion cannot be accepted. Furthermore, while it cannot be gainsaid that in a tripartite arbitration where each party makes a choice, it is obvious that two of the arbitrators are partisan (*Matter of Astoria Med. Group* [*Health Ins. Plan of Greater N. Y.*], 11 N Y 2d 128), that does not permit ex parte contacts by a duly appointed arbitrator with the party whom, in theory, he represents. (See *Matter of American Eagle Fire Ins. Co.* v. *New Jersey Ins. Co.,* 240 N. Y. 398, 405.) (See also, The Use of Tripartite Boards in Labor, Commercial, and International Arbitration, 68 Harv. L. Rev. 293, 324–325.) To allow it, would, in effect, create a form of negotiation rather than arbitration. It might also be considered similar to the party passing judgment on his own claim. (Cf. *Matter of Miller* [*Weiner*], 260 App. Div. 444.) Under the circumstances, the arbitration was allowed to proceed on the wrong theory, and one of the arbitrators was unduly biased, which means that the cross petition to vacate should be granted and a new arbitration directed.