OPINION OF THE COURT
Martin B. Stecher, J.
At issue is the point at which a party to an arbitration may withdraw all or part of the claim.
The petitioner moves to confirm the award of arbitrators (CPLR 7510); respondent cross-moves to vacate the award and remand the arbitration to the arbitrators for further proceedings with certain instructions.
The petitioner and the respondent each own 50% of the shares of Shane Industries, Inc. They are the only shareholders and the only significant directors. Their shareholders’ agreement provides in part, at paragraph 11: "Any controversy or claim arising out of or relating to this Agreement, or the breach thereof’ shall be submitted to arbitration. At paragraph 2 the parties agreed to joint control of the corporation and at paragraph 10 (d) they "agreed that the officers, as employees shall be compensated equally” except for a sum not relevant to this arbitration.
The demand for arbitration contained 12 claims including that the respondent compensated himself far in excess of what the corporation paid to the petitioner; that respondent removed petitioner from participating in control of the business; that he directed that all mail and other communications be received not at the corporate office but at his home; and other similar claims of the alleged abrogation of the rights of the petitioner.
*817 Of the first of the 12 demands for relief, subdivision "A” is the most significant to the motion and cross motion: it seeks "an award in the sum of $290,000 reflecting the diminution in value of petitioner’s stock ownership of respondent Shane Industries, Inc.” The cross motion, in addition to seeking the vacatur of the arbitrator’s award, asks that the court "remand this matter to the arbitrators for further proceedings with (i) an instruction to the arbitrators to deny the withdrawal of the claim for a buy out and to give effect to the stipulation executed on behalf of the parties * * * and the Business Appraisal Report executed by the parties’ appraisers”, and "(ii) a direction to the arbitration panel to modify its decretals of February 26, 1993 upon giving effect to such documents.”
The arbitration demand makes no discernable reference to a "claim for a buy out.” The only documents of significance annexed to the notice of cross motion are a stipulation that the parties’ respective appraisers attempt, "to jointly set a value for Stephanie Eisenberg’s 50% interest in Shane Industries, Inc.,” and a report of the appraisers that Shane Industries was, at the stated date, valued at $550,000.
The award itself makes no reference to claim concerning a "buy out.”
The respondents’ memorandum of law and the transcript of the six days of hearings of this arbitration proceeding finally reveal what the respondent is referring to in his papers. At page 19 of the transcript, in Mr. Kantor’s opening statement on behalf of petitioner, he says "the logical thing is a buy out since liquidation would be a very substantial loss to all parties”. Mr. Kantor contended that the parties could not continue together, that they were on the verge of violence on numerous occasions and that the relationship was disastrous to the corporation and to both of the parties. Mr. Aronson on behalf of Mr. Gelfman made no response to the buy out suggestion. The arbitrators, however, announced that "the panel will consider as a claim or as a type of relief, claimants’ apparent request that respondent * * * be directed to buy her out so to speak”. Mr. Aronson remained noncommittal. The parties did agree, however, to have the respective appraisers seek to reach a joint appraisal and agreed to "be bound thereby for all purposes in a connection with the above captioned arbitration.” Evidence of value was to be submitted only if the appraisers disagreed. They did not disagree.
On the sixth and last day of the arbitration, after all the *818 evidence had been received and the attorneys were about to sum up, Mr. Wolfe, attorney for the petitioner Eisenberg, stated: "based upon instructions from my client, I hereby withdraw paragraph A of the claim for relief contained in the amended demand for arbitration. That is a claim seeking a monetary award based upon diminution of claimant’s equity in Shane Industries, Inc.” In effect what Mr. Wolfe was seeking to withdraw was his client’s demand that Mr. Gelfman buy out Ms. Eisenberg’s interest in Shane Industries, Inc. at the appraisers’ joint valuation of the business. Her reason? The business might be worth more than the appraisers reported and Gelfman would have a windfall.
It was only after Eisenberg’s attempted withdrawal of the buy out claim that Gelfman’s attorney stated that "Mr. Gelfman consents to the buy out of Ms. Eisenberg’s shares for 50% of the value fixed by the appraiser as set forth in paragraph three of their December 2, 1992 report”. He went on to contend that it was "a little late in the day to be withdrawing claims,” that "the case has been tried on that basis,” and that "we request that the sale be directed as requested.”
One of the arbitrators, on behalf of the panel, responded, "With regard to a motion to withdraw Part A of your client’s claim, Mr. Wolfe, the panel is reserving decision on that.” The panel never announced a decision on permitting or denying withdrawal of the claim and it made no express reference to it in its award. Instead, the panel made an award to Ms. Eisenberg consistent with the remaining portions of her demand.
The court may vacate an award (CPLR 7511 [b] [1]):
"if the court finds the rights of [the] party were prejudiced by:
"(i) corruption, fraud or misconduct in procuring the award; QJ. * * *
"(iii) an arbitrator * * * making the award * * * so imperfectly executed it that a final and definite award upon the subject matter submitted was not made.”
The court may also vacate an award which "is violative of a strong public policy [or] is totally irrational” (Matter of Town of Calicoon [Civil Serv. Empls. Assn.], 70 NY2d 907, 909; Matter of Silverman [Benmor Coats], 61 NY2d 299, 308).
What the arbitrators did with the buy out claim was never enunciated and is unclear, but they must have exercised one of the three choices:
*819 (1) Either they did not rule on Eisenberg’s application to withdraw the claim and were silent on the claim, or
(2) they allowed withdrawal, or
(3) they declined to allow withdrawal and denied the buy out claim.
Whichever they actually chose, the award must be set aside.
I. FAILURE TO MAKE AN AWARD
If the arbitrators simply didn’t act on the claim they "so imperfectly executed [the award] that a final and definite award upon the subject matter submitted was not made” (CPLR 7511 [b] [1] [iii] [entitling the court to vacate the award]).
II. IF WITHDRAWAL WAS ALLOWED
If we infer from the proceedings and the award itself that the arbitrators, despite their silence on the issue, permitted the buy out claim to be withdrawn, the issue arises whether or not the arbitrators were guilty of "misconduct in procuring the award” (CPLR 7511 [b] [1] [i]). Despite the absence of recent case law or applicable current statute, I am satisfied that permitting withdrawal subsequent to the submission of all evidence violated strong public policy and constituted misconduct.
Earlier in the legal history of this State, it was "the common-law rule that submissions to arbitration are revocable in their nature * * * until its nature is changed by legal enactment” (People ex rel. Union Ins. Co. v Nash, 111 NY 310, 315 [1888]), for "[t]he agreement of submission is executory, until the controversy is completely ended between the parties by the submission to the arbitrators of the controversial facts for their decision; and not till then can it be said that the agreement has been executed and passed beyond the power of the parties to withdraw from or to break” (supra, at 316). This common-law rule was codified at one time (former Code Civ Pro § 2383; see, New York Lbr. & Wood Working Co. v Schnieder, 119 NY 475 [1890]).
A later Court said "it is significant that even under the earlier practice [when arbitration agreements were revocable at will] a party who stayed in until the final submission to the arbitrators for their decision could no longer trim his sails to shift his course when the wind of defeat began to rise” (Matter *820 of American Eagle Fire Ins. Co. v New Jersey Ins. Co., 240 NY 398, 407 [1925]).
It was exactly this consideration which inspired the Legislature to enact CPLR 3217 and its predecessor Rules of Civil Practice rule 301 (see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3217:12, at 732; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 3217.01), in short, that a litigant sensing defeat or an adverse decision or seeking a better price should not be permitted to withdraw in order to seek a more favorable forum or occasion to pursue the claim. The public policy of this State as enunciated over the years as the "common law” and by statute, simply does not countenance such withdrawal (see, People ex rel. Union Ins. Co. v Nash, supra; New York Lbr. & Wood Working Co. v Schnieder, supra; former Code Civ Pro § 2383; former Rules Civ Prac rule 301; CPLR 3217).
Were the issues fully submitted? In my judgment they were. The arbitrators announced "[s]ince no one has mentioned further testimony we expect for you to sum up and for us to see that document.” The document was the appraisers’ report and it was submitted. On the following hearing date no other evidence was offered, the petitioner sought to withdraw her buy out claim and the attorneys summed up. "Fully submitted” at an arbitration can have only one meaning: that all evidence has been received. The arbitrators were free to decline to hear summations — but were not free to decline, arbitrarily, to hear evidence. When all of the evidence had been received, the issues were "submitted” and neither party was any longer free, unilaterally, to "trim [her] sails to shift [her] course when the wind of defeat began to rise” (Matter of American Eagle Fire Ins. Co. v New Jersey Ins. Co., supra, at 407).
Allowing withdrawal following the submission of all evidence for the reason stated by Eisenberg’s attorney, that Eisenberg was fearful that Gelfman might make a profit from the buy out, was highly prejudicial. The respondent had borne the expense of a six-day trial geared largely to the buy out demand. He had structured his case to it, hired an appraiser and stipulated to be bound by the appraisal prior to the time the appraisers reported, thereby putting himself at considerable financial risk.
Allowing withdrawal of the claim at that point was in violation of a clear public policy and merits having the award set aside.
*821 III. IF WITHDRAWAL WAS DENIED
It is conceivable, from the language of the award, that the arbitrators declined to allow Ms. Eisenberg to withdraw the buy out claim, that they considered it and that they disallowed it.
The award directs payment of $116,029.21 by Gelfman to Eisenberg, directs Gelfman to assign certain patent rights to their corporation, Shane Industries, Inc., makes other directives concerning future "salary compensation” to the parties, the place of banking and record maintenance, and then provides, inter alia, that "the balance of claimant’s [Eisenberg’s] claims, including attorneys’ fees, are hereby denied.”
If the award is thus interpreted, to deny Eisenberg’s demand that Gelfman buy her shares, the award is irrational. Eisenberg demanded the purchase, the parties stipulated to a method of fixing the price and Gelfman agreed to buy Eisenberg’s shares at the price so fixed. There was total agreement by the parties on the buy out at a time when neither could withdraw his or her claim. No rational arbitration award could, under such circumstances, deny the buy out demand.
For the reasons set forth, the motion to confirm the award of arbitrators is denied and the cross motion to set it aside is granted and the matter is referred back to the same arbitrators (CPLR 7511 [d]) to render a complete, final and definite award on all of the issues heretofore submitted.